### Ephraim A. Otis, Appellant, v. The Provident Savings Life Assurance Society of New York, Appellee.

### Gen. No. 16,922.

1. INSURANCE—*specific performance of premium contract.* Where an insurance company is indebted to an attorney for an unliquidated amount, an agreement that in satisfaction of such claim the company will deduct each year the increased premium rate due on a policy held by such attorney, on condition that a receipted bill for legal services be given for such deductions, may be specifically enforced.

2. INSURANCE—*discrimination as to premiums.* An agreement by an insurance company to accept an unliquidated claim in payment of increased premium rate due on a policy, on condition that a receipted bill be given each time for such deduction, is not discriminating within the meaning of the Illinois or New York law.

3. INSURANCE—*discrimination as to premiums.* Hurd's R. S. of 1908, Ch. 73, Sec. 27, providing that contracts reducing premiums due on insurance policies must be embodied in such policies, has no application to policies issued prior to its enactment.

Appeal from the Superior Court of Cook county; the Hon. GEORGE A. DUPUY, Judge, presiding. Heard in the Branch Appellate Court

at the October term, 1910. Reversed and remanded with directions. Opinion filed October 3, 1912. Certiorari denied by Supreme Court (making opinion final).

DAVID FALES, for appellant.

MAYER, MEYER, AUSTRIAN & PLATT, for appellee.

MR. JUSTICE MCSURELY delivered the opinion of the court.

Ephraim A. Otis filed his bill in the Superior Court to enjoin the defendant from forfeiting a policy of insurance for $4,000 on his life, and to enforce the performance of a contract with respect to payment of the annual renewal premiums. The court upon hearing ordered the bill dismissed for want of equity, from which decree complainant has appealed to this court.

The defendant is a life insurance company, organized under the laws of the State of New York in 1875, and the complainant is a lawyer of standing who has practiced his profession in Chicago for more than forty consecutive years. In the spring of 1875 the defendant company, desiring to transact business in the State of Illinois, applied to the complainant to act as its agent to accept service of process under the statute regulating foreign life insurance companies in this state. This resulted in his appointment by resolution by the board of directors in April, 1875, but no agreement was made with respect to compensation for his services in that capacity. He was also retained as general counsel for the company in Illinois in all litigated suits it might have in that state, and was not at liberty to take any case or be employed against it in any capacity. This arrangement continued for a period of several years, during which the complainant acted as the attorney of the defendant in the trial of suits brought against it, for which bills were rendered from time to time and paid by the company, but there was no compensation paid for services as special agent of the company for service of process, or for general

72 APPELLATE COURTS OF ILLINOIS.

Otis v. Provident Savings Life Assurance Society, 173 Ill. App. 70.

retainer as counsel for the company, which was allowed to accumulate for final adjustment. In December, 1889, the defendant company issued its policy of insurance on the life of the complainant in the sum of $4,000, which is the subject of this controversy. For nine years thereafter the complainant paid by professional services the annual premium on said policy of $110.40. There was no change in the professional relations between the complainant and the defendant during this time, except that the company had begun to employ other counsel to represent it in suits in Illinois, without disclosing the fact to the complainant, who supposed he was still its general attorney. The complainant learning of this fact, in February, 1897, addressed a letter of inquiry to the company as to whether he was still its attorney in Illinois, and received in reply a letter dated March 1, 1897, as follows:

"DEAR SIR:

We acknowledge receipt of your favor of Feb. 25th, with reference to your appointment, when the society was first organized as its attorney, to accept service of process in your state.

The law in this connection, as we understand it, reads: That an appointment of this character shall continue until another is made; and, therefore, we are glad to advise you that, no other having been made, you are still authorized to accept service of process in case of suit against the society.

Yours truly,

JAS. N. BRAUNLINE,

Asst. Sec."

The complainant later learning definitely that the law business of the company had been taken away and given to other counsel, refused to continue further as attorney for the service of process or assume this responsibility, and resigned his position as such, of which action the company was duly notified. When the annual renewal premium for the year 1898 became due

the complainant received a notice from the company that the amount had been raised above the rate of $110.40 to $138.  There is some controversy and considerable argument in the briefs of counsel touching the right of the company to make this increase in rate, but in our view of the case it is not necessary for us to decide this point.  Upon receiving notice of said increased premium rate, the following correspondence ensued:

"Nov. 22, 1898.

*To the Provident Savings Life Assurance Society, New York City.*

DEAR SIR:

I am this day in receipt of a notice that my annual premium on Policy No. 32932 has been raised from $110.40 annually to $138.

I wish to remind your company that this policy was taken out on the level premium basis while I was attorney for your Company, with the implied understanding that the premium would always be adjusted by business of your Company.  For upwards of twenty years I have appeared on the records as your attorney for Illinois under a retainer to take no case against you, although I learned afterwards that during a portion of that time your business had gone elsewhere. Under the circumstances I feel that any increase of this policy is neither fair nor equitable, and if it is insisted on I shall feel free to press a claim against the Company for the use of my name and general retainer as your attorney as far back as the law will allow it.

Your early reply will greatly oblige,

Yours truly,

E. A. OTIS."

"PROVIDENT SAVINGS LIFE ASSURANCE SOCIETY,

"246 Broadway, New York City.

Nov. 29th, 1898.

P. O. Box 787.

Dictated.

HON. E. A. OTIS,

100 Washington St., Chicago, Ill.

DEAR SIR:

We duly received your favor of the 22nd inst., re-

ferring to the premium on your Policy No. 32,932 for
$4,000. I can find no record on our books of the fact
that there was any understanding that the premiums
on your policy would always be adjusted by business
from the Society.

We are aware of the fact that your name has ap-
peared as attorney to accept service of process for the
Society in the State of Illinois for many years. Dur-
ing that time you were always employed as our attor-
ney whenever occasion for your services arose. A
change of attorney was made by a previous manage-
ment, and we do not think that proper courtesy was
accorded you in not notifying you of the change at the
time it was made.

We would like to retain your friendship and good-
will and as an evidence of our wish in that respect,
you may send us your check for $110.40 and a re-
ceipted bill for legal services for $27.60, and we will
send your receipt for the premium due December 10th
on your policy.

We hope you will permit us to feel that when cir-
cumstances necessitate, we may call upon you for legal
services.

Yours truly,<br>
WM. E. STEVENS,<br>
Secretary."<br>
"December 6, 1898.

WILLIAM E. STEVENS, ESQ.,
  Prov. Savs. Life Assurance Society,
  New York City.
DEAR SIR:

"Yours of the 29th inst. is received, and in reply I
am frank to say that, as I have been advised, the
change of attorney and failure to advise me of it to
which you refer, was the act of the previous manage-
ment, and that the present counsel of the Company
had no knowledge of our previous existing relations.

In regard to my policy, No. 32,932, I am disposed to
adjust the matter as you suggest, by payment of
$110.40 each year, and a receipted bill for legal serv-
ices for the balance. Would it not, however, be ad-
visable in such event to have the policy either issued

on a different form, or have a distinct understanding of the matter so that your agent here each year will know exactly what he is to receive in cash to keep the policy alive. Under these circumstances I should feel free to act for you as counsel, if desired.

You are entirely familiar with my past relations with the Company and with the fact that for many years I have been under a general retainer to accept no business against the Company, for which I have received no compensation in the way of services or otherwise.

If this arrangement of the matter is satisfactory, kindly advise me at your earliest convenience, and oblige,

Very truly yours,

E. A. OTIS."

"PROVIDENT SAVINGS LIFE ASSURANCE SOCIETY,<br>246 Broadway, New York City.

Dec. 9th, 1898.

P. O. Box 787.
Dictated.
HON. E. A. OTIS,
    100 Washington St., Chicago, Ill.
DEAR SIR:

Your favor of the 6th inst. is received and contents noted. We are much pleased with the tenor of your letter, and we hope, as a result of same, that some business will grow out of it in the future.

We would much prefer, if it is all the same to you to have all future premiums on your policy remitted to this office. Our agreement with you is that you may pay $110.40 each year, and give us a receipted bill for legal services for the balance of the premium, which will be set forth in the regular notice sent you. You understand that this premium will increase each year, and therefore the amount of your bill for legal services will also increase, while the cash payments remain the same. We have made a record of this on our books, and as it is a personal arrangement between you and this office, we prefer that the business should be transacted direct with this office. No change in the policy is necessary.

Please confirm our understanding of the matter and state that the same is satisfactory to you and in accordance with your understanding.

With kind regards, I am,

Yours truly,

WILLIAM E. STEVENS, Sec.''

December 12, 1898.

WILLIAM E. STEVENS, ESQ.,

    Sec., Provident Savings Life Assurance Society,

      New York City.

MY DEAR SIR:

I am in receipt of yours of the 9th inst. and beg to say that the arrangement you propose is entirely satisfactory and in accordance with my understanding of the transaction. I will be happy hereafter to remit premium direct to the home office as you suggest.

    ''Very sincerely yours,

        ''E. A. OTIS.''

The defendant company entered upon its records an entry of the agreement referred to in the letter written by William E. Stevens, secretary of the company, on December 9, 1898, as follows:

''Make official notice and the receipt, for increased Prem. each year, and a Voucher for difference between increased Prem. and original Prem. $110.40 and pin to Notice every time. For authority, see letters filed with application Dec. 13, 1898.''

This compromise of the claim of the complainant for past services was accepted by both parties as a final adjustment of the whole matter, and was faithfully observed by both parties for eleven years without objection or protest. The renewal premium for each year was paid by $110.40 cash and a receipt for services in the form prepared by the company for the increased premium by reason of advancing age.

It is shown in the record by the testimony of Mr. Wm. E. Furness, an experienced lawyer at the Chicago bar, and it is not disputed, that the services for acting as attorney for an insurance company for service of process and for general retainer, exclusive

of litigated business, would be worth $100 a year, and that this would not be affected in any way by the fact that the party rendering such service was also employed in conducting the litigated business of the company. The complainant acted as attorney for service of process and under a general retainer for twenty-two years, for which, under the undisputed testimony, he was entitled to receive $2,200.

In November, 1909, the usual remittance was made to the company of $110.40 cash, together with a receipted bill for legal services in the form prepared by the company for an amount equal to the difference between $110.40 and the increased premium, in accordance with the agreement which had been previously made. This remittance and receipt for fees was returned to the complainant with a letter from the general counsel of the company, under date of November 16, 1909, declining to accept the same in payment of the insurance premium, stating as the company's reason for so doing that "we do not see how the present officers of the company can, without violating the provision of the New York statute and of the penal code of this State, relating to discrimination, permit this method of paying the premium to continue." At this time complainant had reached the age of seventy-five years, an age when other insurance was probably impossible. Upon receipt of this letter complainant went to New York and made a proper tender of cash and the receipt for legal services to the company, which was refused. No offer has ever been made to return any of the premiums paid to the defendant.

We can discern no reasonable grounds for finding that the agreement of 1898 was invalid for want of a sufficient consideration, or an agreement which the company had no power to make. Complainant at that time had a claim against the company of about $2,200. If he had sued the defendant there probably would

have been a recovery. No one would deny the right of the company to pay this claim in full or to settle the same upon such a reasonable basis as might seem to its advantage. In this situation the defendant chose to compromise, and did so upon a basis which apparently was substantially to its benefit. It agreed to pay the claim in annual installments during the life of the complainant, each of such installments to be equal to the difference between $110.40, the annual premium theretofore paid, and the increased premium rate. It is apparent at once that the defendant could not claim a forfeiture if, when a premium of $130.40 fell due, it had remitted $20 to the complainant as an instalment of the payment due on this compromise, and the complainant had then returned the $20 with $110.40 in payment of the insurance premium. In essence and substance this is just what was done. This view of the case makes the statutes of Illinois and New York relative to discrimination inapplicable; there was no discrimination. As we have stated, the complainant was paying the full amount of premiums required from his class of insured. The provision of the Illinois statute requiring that "such contract of insurance shall be fully and wholly expressed and contained in the policy issued and the application therefor" (Sec. 27, Chap. 73, Hurd's Revised Statutes of 1908) has no application, for the reason that this provision became the law subsequent to the issuance of the policy of insurance in controversy.

The mere statement of the facts herein moves us to the conclusion that the chancellor was in error in decreeing the dismissal of the bill. The decree will be reversed and the cause remanded with directions to grant the injunction prayed for in the bill, and for such other and further proceedings as the court may deem necessary, not inconsistent with this opinion.

*Reversed and remanded with directions.*