## PARKER v. ROUTZAHN.
### No. 5847.

Circuit Court of Appeals, Sixth Circuit.

March 8, 1932.

Joseph B. Shepler, of Cleveland, Ohio (Thompson & Smith, of Cleveland, Ohio, on the brief), for appellant.

Percia E. Miller, of Washington, D. C. (Wilfred J. Mahon and John B. Osmun, both of Cleveland, Ohio, and C. M. Charest, of Washington, D. C., on the brief), for respondent.

Before HICKS and HICKENLOOPER, Circuit Judges, and TUTTLE, District Judge.

TUTTLE, District Judge.

This is an appeal by the plaintiff below from a judgment of the District Court, after written waiver of a jury, which dismissed an action brought against the defendant collector of internal revenue to recover certain income taxes, hereinafter mentioned, paid to the defendant under protest. The action was commenced by John J. Parker, but upon his death the administratrix of his estate was substituted as plaintiff herein. He, however, for convenience, will be hereinafter designated as plaintiff.

The material facts, all of which are undisputed, are as follows:

On January 22, 1906, the plaintiff, then in the employ of the New York Life Insurance Company as an insurance agent, executed and delivered to his wife, without any valuable consideration, a written instrument containing the following provisions material here:

"In consideration of natural love and affection, I, John J. Parker, do hereby sell, assign, transfer and set over unto my wife, Camille M. Parker, all my right, title and interest in and to the funds of Nylic, said Nylic being an organization of agents in the New York Life Insurance Company, and all benefits and advantages whatsoever therein subject to my Nylic agreement and the rules and regulations of said Company.

"And I hereby further direct said company to pay to my said wife all my benefits in said Nylic as they accrue whether under my present Nylic agreement or under any future modification thereof, or any future Nylic arrangement.

"For the same consideration, I further hereby sell, assign and transfer unto my said wife all renewal commissions hereafter ac-

cruing to me, whether under my present contract with said New York Life Insurance Company or any future contract with said Company, and I order and direct said Company to pay said renewals to my said wife as they accrue."

The funds and commissions mentioned in this instrument consisted of certain bonuses and commissions thereafter becoming payable by the insurance company to the plaintiff under the terms of his employment by it, the amount of which compensation was dependent on the length of his service and the amount of premiums to be received by the company under its insurance policies sold by plaintiff in previous and in future years.

During the taxable year 1918, the insurance company paid to the said wife of the plaintiff the sum of $3,000, representing the bonus accruing to the plaintiff in that year based on the length of his service and the amount of insurance written by him, and the further sum of $6,671.71, representing commissions accruing to him during such year on renewal premiums paid to it under insurance policies negotiated by him.

On March 14, 1919, plaintiff filed with the defendant collector his income tax return for the taxable year 1918 without reporting, or paying any tax with respect to, the said sums paid by the insurance company to his wife in that year. In February, 1923, the Commissioner of Internal Revenue assessed an additional income tax against the plaintiff based upon the ground that the aforementioned sums so paid to his wife constituted part of the taxable income of the plaintiff for the year 1918. On February 26, 1923, plaintiff filed with the defendant a claim in abatement of such assessment, as a result of which the collection of this additional tax was deferred by the defendant pending a decision thereon. On December 17, 1923, this claim in abatement was rejected by the Commissioner of Internal Revenue. On March 14, 1924, the five-year period within which collection of this tax was, by section 250 (d) of the Revenue Act of 1921 (chapter 136, 42 Statutes at Large, 227, 264, 265), limited, expired. On November 22, 1928, after a threat of distraint by the defendant, this tax was paid by the plaintiff to the defendant under protest. Thereafter a claim for refund was duly made and rejected, and thereupon this action was commenced for the recovery of such tax.

Section 213 of the Revenue Act of 1918 (chapter 18, 40 Statutes at Large, 1057, 1065), applicable to the income here involved, imposed an income tax upon net incomes, including "income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid."

Section 607 of the Revenue Act of 1928 (chapter 852, 45 Statutes at Large, 874), being section 2607 of title 26 of the United States Code (26 USCA § 2607), provides as follows:

"Any tax (or any interest, penalty, additional amount, or addition to such tax) assessed or paid (whether before or after May 29, 1928) after the expiration of the period of limitation properly applicable thereto shall be considered an overpayment and shall be credited or refunded to the taxpayer if claim therefor is filed within the period of limitation for filing such claim."

Section 611 of the same statute (45 Statutes at Large, 875), being section 2611 of title 26 of the United States Code (26 USCA § 2611), provides as follows:

"If any internal-revenue tax (or any interest, penalty, additional amount, or addition to such tax) was, within the period of limitation properly applicable thereto, assessed prior to June 2, 1924, and if a claim in abatement was filed, with or without bond, and if the collection of any part thereof was stayed, then the payment of such part (made before or within one year after May 29, 1928) shall not be considered as an overpayment under the provisions of section 2607, relating to payments made after the expiration of the period of limitation on assessment and collection."

It is urged by the plaintiff (1) that the instrument of assignment in question was a valid, legal assignment of the future earnings of the plaintiff therein mentioned, the effect of which was to transfer to the assignee a vested interest in such earnings prior to the time of their accrual to him and receipt by her in 1918, so that they did not constitute any part of his taxable income for that year; and (2) that, in any event, as the collection of the tax here involved had been barred by the applicable statute of limitations prior to the time of such collection, plaintiff is entitled to recover such tax as an "overpayment" under the provisions of section 607 of the Revenue Act of 1928, hereinbefore quoted.

■ 1. It is contended by the defendant that, inasmuch as, at the time of the execution of this assignment, the earnings of the plaintiff which it purported to assign were not in existence, this instrument operated, not as a legal assignment conveying a present interest

to the assignee, but merely as an equitable assignment, under which such assignee acquired no title or rights in such future earnings until they had been earned and received, in contemplation of law, by the plaintiff, at which time they became part of his taxable income, prior to their receipt by her. There is considerable force in this argument. Leydig v. Commissioner of Internal Revenue, 43 F.(2d) 494 (C. C. A. 10); Seaboard Small Loan Corporation v. Ottinger, 50 F.(2d) 856 (C. C. A. 4). As was pointed out by the court in the case last cited [at page 857 of 50 F.(2d)],

"The rule is that an assignment of wages to be earned in the future is not good at law because ineffective to pass legal title, but will be enforced in equity. It is enforced in equity, not as a conveyance in praesenti of what manifestly does not exist, but because it is regarded in equity as a contract to take effect and attach to the wages assigned as soon as they come in esse. Until the wages are earned, it is regarded as an agreement to convey; after that time as a conveyance."

It is further insisted by the defendant that, as this equitable assignment was not supported by a valuable consideration, and was therefore unenforceable and inoperative, at least until after the time when these future earnings had actually accrued to the plaintiff, prior to which time he could have revoked such assignment, the legal situation is not substantially different from what it would have been if plaintiff had expressly reserved the right to make such revocation, in which case the mere reservation of such right, irrespective of its exercise, would have rendered him liable for this tax. Corliss v. Bowers, 281 U. S. 376, 50 S. Ct. 336, 74 L. Ed. 916. In that case, the court used the following significant language (page 378 of 281 U. S., 50 S. Ct. 336):

"Taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is paid. If a man directed his bank to pay over income as received to a servant or friend, until further orders, no one would doubt that he could be taxed upon the amounts so paid. It is answered that in that case he would have a title, whereas here he did not. But from the point of view of taxation there would be no difference. The title would merely mean a right to stop the payment before it took place. The same right existed here although it is not called a title but is called a power. The acquisition by the wife of the income

became complete only when the plaintiff failed to exercise the power that he reserved. * * * Still speaking with reference to taxation, if a man disposes of a fund in such a way that another is allowed to enjoy the income which it is in the power of the first to appropriate it does not matter whether the permission is given by assent or by failure to express dissent. The income that is subject to a man's unfettered command and that he is free to enjoy at his own option may be taxed to him as his income, whether he sees fit to enjoy it or not."

Substantially the same principle was applied to a somewhat different state of facts by the Circuit Court of Appeals for the Second Circuit in Mitchel v. Bowers, 15 F.(2d) 287.

It is, however, in our opinion, unnecessary to determine to what, if-any, extent the foregoing considerations are applicable here, for the reason that, in any event, we think that this branch of the case at bar is controlled, in principle, by the decision of the Supreme Court in Lucas v. Earl, 281 U. S. 111, 50 S. Ct. 241, 74 L. Ed. 731, where the court held, in effect, that, in view of the language of section 213 of the Revenue Act of 1918, imposing a tax upon the net income of every individual, including "income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid," the statute must be construed as taxing such salaries as income to the persons who earn them, regardless of any anticipatory contracts or arrangements designed to prevent such a salary from vesting in the person by whom it is earned. That case presented the question, as stated by the court (at page 113 of 281 U. S., 50 S. Ct. 241), whether the respondent, Earl, could be taxed for the whole of the salary and attorneys' fees earned by him in certain years or should be taxed for only a half of them in view of a contract with his wife, made before receipt of such salary and fees, providing that his future earnings should be received and owned by him and his wife as joint tenants.

After referring to the language of the statute just quoted, the court proceeds as follows:

"A very forcible argument is presented to the effect that the statute seeks to tax only income beneficially received, and that taking the question more technically the salary and fees became the joint property of Earl and his wife on the very first instant on which they were received. We well might hesitate upon the latter proposition, because however

the matter might stand between husband and wife he was the only party to the contracts by which the salary and fees were earned, and it is somewhat hard to say that the last step in the performance of those contracts could be taken by anyone but himself alone. But this case is not to be decided by attenuated subtleties. It turns on the import and reasonable construction of the taxing act. There is no doubt that the statute could tax salaries to those who earned them and provide that the tax could not be escaped by anticipatory arrangements and contracts however skilfully devised to prevent the salary when paid from vesting even for a second in the man who earned it. That seems to us the import of the statute before us and we think that no distinction can be taken according to the motives leading to the arrangement by which the fruits are attributed to a different tree from that on which they grew."

This language is, we think, in substance equally applicable to the present situation, and requires us to hold, as we do, that the assignment here involved, by which this taxpayer attempted to transfer to his wife the right to receive future earnings of his which would otherwise have been taxable as income to him, was ineffective to avoid the taxation of such earnings as his income, notwithstanding the fact that she, and not he, actually and beneficially received such earnings. Leydig v. Commissioner, supra; Bishop v. Commissioner, 54 F.(2d) 298 (C. C. A. 7).

We do not overlook cases, such as Iowa Bridge Co. v. Commissioner of Internal Revenue, 39 F.(2d) 777 (C. C. A. 8); Copland v. Commissioner of Internal Revenue, 41 F.(2d) 501 (C. C. A. 7); Commissioner of Internal Revenue v. Field, 42 F.(2d) 820 (C. C. A. 2); and Hall v. Burnet, 60 App. D. C. 332, 54 F.(2d) 443, holding, in effect, that income accruing from a contract or other property after an irrevocable assignment, not merely of future income but of the property from which such income afterwards arises, is taxable to the assignee and not to the assignor. Such cases, however, are substantially different, in their facts, from the present case, which involves an attempted assignment only of compensation for personal services of the assignor accruing subsequent to the time of such assignment. We therefore need not determine whether the conclusions reached in those cases, at least with respect to the assignment of a contract for such subsequently accruing compensation, are consistent with the decision in Lucas v. Earl, supra, and its necessary implications.

2. Subsequent to the entry of the judgment below, the Supreme Court, in Graham & Foster v. Goodcell, 282 U. S. 409, 51 S. Ct. 186, 75 L. Ed. 415, fully considered and construed the meaning and effect of sections 607 and 611 of the Revenue Act of 1928, hereinbefore quoted. That decision, in our opinion, decided, either expressly or by necessary implication, adversely to the position of the present plaintiff, the contention that the payment of the taxes involved, after the expiration of the period of limitation applicable thereto, under the circumstances already mentioned, is recoverable as an "overpayment" under the section 607, and that such payment was not excepted from the provisions of section 607 by the qualifying provisions of section 611. As we understand the argument of the plaintiff, it is now confined to the claim that, because this payment was made in response to a threat of distraint by the defendant collector, it·was an involuntary payment, and that section 611 does not apply to involuntary payments, at least if made after the time of the enactment of section 611. We are unable to agree with these contentions. As was pointed out by the Supreme Court in Graham & Foster v. Goodcell, just cited (at page 416 of 282 U. S., 51 S. Ct. 186, 189): "Section 611 enacts a qualification by providing that in stated circumstances the payment of the tax shall not be considered· an overpayment under the provisions of section 607. These circumstances are (a) an assessment of the tax within the time applicable thereto and before June 2, 1924, (b) the filing of a claim in abatement, (c) the stay of the collection of any part of the tax, and (d) the payment of such part of the tax before, or within one year after, the enactment of the Act of 1928." After referring to the contention, there made, to the effect that these sections of the statute "are not applicable to payments made under duress," the court says: "We are also of the opinion that the statute embraces involuntary payments." Although it is true that the particular payments there involved had apparently been made prior to the enactment of these sections, and that therefore there was no occasion for the court to specifically refer to payments made after such enactment, yet we cannot perceive any sound reason for holding these statutory provisions applicable to such prior payments and not to such subsequent payments, especially in view of the clear and positive language of section 611, including within its scope such payments "made before or within one year after the enactment of this act."

As, therefore, the tax in question was, within the period of limitation applicable thereto, assessed prior to June 2, 1924, a claim in abatement was filed, the collection of such tax was stayed, and payment thereof was made within one year after the enactment of section 611, we think it clear that such section is applicable to the payment of this tax and prevents its refund as an overpayment under the provisions of section 607.

It results that the judgment of the District Court must be, and it is, affirmed.