SOL AND ADELE MINZER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 63080.    Filed March 13, 1959.

*Samuel E. Ziegler, Esq.,* for the petitioners.
*Harold D. Rogers, Esq.,* for the respondent.

### OPINION.

RAUM, *Judge:* The Commissioner determined a deficiency in income tax in the amount of $213.90 for the calendar year 1954. An issue raised by an amendment to respondent's answer has been settled by agreement. The facts in relation to the original determination were fully stipulated.

Petitioners, husband and wife, residing in Dallas, Texas, filed a joint income tax return for 1954; the matter in controversy relates to the husband, who will hereinafter be referred to as petitioner.

Petitioner was an insurance broker. He was engaged in 1954 in the business of soliciting and writing life insurance and casualty insurance as a representative of six life insurance companies and under brokerage arrangements with two firms writing casualty insurance. Among the life insurance companies which petitioner represented were the Occidental Life Insurance Company of California (hereinafter referred to as Occidental) and the California-Western States Life Insurance Company (hereinafter referred to as Western States). His contracts with Occidental and Western States provided for the payment to him of first-year and renewal commissions on all policies of life insurance secured by him for the respective companies.

During 1954 petitioner took out or continued to carry policies of insurance on his own life with Occidental and Western States. As a result of his arrangements with those companies he was entitled to the same commissions with respect to these policies that he would have received had they been written upon the lives of third persons. The commissions on these policies for 1954 were in the aggregate amount of $455.11 ($335.70 for insurance with Occidental and $119.41 for insurance with Western States), and he obtained the benefit thereof either by remitting the net premium (after deducting his commissions) to the company or by remitting the gross premium and then receiving the commission from the company. The record does not

clearly show which method was employed here,[1] but we agree with both parties that the form of the transaction is of no consequence in this case. The question for decision is whether petitioner is properly chargeable with having received income in the amount of the so-called commissions of $455.11 in connection with the policies upon his own life.

If the amount involved were actually compensatory in nature, if it were like a "bargain purchase" where an employer intends to compensate an employee by selling property to the latter at less than fair market value (see Income Tax Regs., sec. 1.61–2(d)(2)), we would have no hesitancy in holding that the net reduction in the cost of petitioner's insurance represents taxable income to him. But petitioner was a broker; he was not an employee. In selling insurance to strangers he was free to sell policies of any of a number of companies; and in purchasing his own insurance from one of those companies he in no way was the recipient of compensation, as contended by the Government.

The situation is not materially different from that of a stockbroker who has a seat on a stock exchange and who buys or sells securities on his own account. Under stock exchange regulations a broker is required to charge specified commissions. Yet when he uses the exchange facilities to deal in his own stock his net cost in buying securities is lower than the cost to anyone else, and the difference is due to the so-called commission which is not applicable to transactions involving his own securities. Similarly, a real estate broker may be required to charge commissions at fixed rates pursuant to local regulations; yet when he acquires or disposes of property for his own account he obtains the economic advantage of a net price in which the effect of the commission that would otherwise be applicable is eliminated. Plainly, neither the stockbroker nor the real estate broker realizes taxable income within the meaning of the revenue laws in the foregoing examples.

Consider also the case of the salesman who takes orders for the sale of merchandise by the XYZ Brush Company to the ultimate consumer and is paid a "commission" on each sale. Can it fairly be said that he realizes income if he should buy one of the products for his own use at the net price which does not include the commission that would otherwise be reflected in the price of the merchandise? We think the answer must be in the negative.

---

[1] The record shows that it was the practice of Western States to permit its agents to remit net premiums on first-year policies but to require the gross premiums to be transmitted to it in subsequent years. The record does not disclose the practice of Occidental, nor does it show whether the 1954 commissions here involved were first-year commissions or so-called "renewals" payable in respect of subsequent year premiums.

Examples might be multiplied as to dealers in other types of products, which may even be subject to the so-called fair trade laws in many States, and thus could not be sold at retail below minimum fixed prices. It is therefore no answer to say here that the laws of Texas prohibit the sale of life insurance policies at less than normally scheduled rates of premium. Cf. Tex. Ins. Code art. 21.21 (Vernon).

The present difficulty in large measure grows out of the nature of the insurance business and semantics with respect to the word "commission." Of course, local law may fix the rate at which insurance is sold. But this does not mean that when a broker buys insurance on his own behalf at what is essentially the "wholesale" cost he is in receipt of compensation. The word "commission" while normally suggestive of compensation for services is a verbal trap when applied to the reduction in cost of a broker's own insurance. It is no more *compensatory* to him than the economic benefits enjoyed by any of the other persons noted in the examples referred to above. Although there may be factual differences between petitioner's situation and the ones relating to such other persons which may be of vital significance in other contexts, the important thing here is that each of them derives an economic benefit (as an incident to his status as a stockbroker etc.) that is not treated as income because it is not compensatory and petitioner should be treated similarly because his economic benefit is likewise not compensatory. Rules made for the regulation of insurance companies for the purpose of administering insurance laws are not necessarily to be applied in determining Federal income tax liability. Cf. *Silverman* v. *McGinnes*, 259 F. 2d 731 (C.A. 3). Of pivotal significance here is the fact that petitioner derived an economic benefit merely as an incident to his status as an insurance broker, similar to the economic benefits that might accrue to the persons described in the foregoing examples, and the reason that such benefits are not regarded as taxable income is that they are not compensatory in nature.

Respondent places much emphasis upon Treasury practice beginning with a ruling in 1915 (T.D. 2137, 17 T.D. 48), which was reaffirmed and explained in 1932. G.C.M. 10486, XI–1 C.B. 14. The latter ruling reads in part as follows:

Information is requested relative to the basis on which a ruling relating to insurance commissions was made.

The particular ruling, which is one of several rulings contained in Treasury Decision 2137, reads as follows:

"*Commission retained by agent on his own life insurance policy.*—A commission retained by a life insurance agent on his own life insurance policy is held

to be income accruing to the agent, and should be included in his return of income for the assessment of the income tax.

"*If a life insurance company reduces the standard charge of an insurance policy to a purchaser and the relationship of employer and employee does not exist, the amount by which the policy is reduced can not be considered income* [Italic supplied.] at the time of purchase for the reason that it is not 'gain derived from capital, from labor, or from both combined,' nor 'profit gained through a sale or conversion of capital assets' within the meaning of the definition of income as stated in *Eisner* v. *Macomber* * * *

"The reason that the commission allowed an insurance agent on a policy taken out on his own life is considered income is that the *relationship of employer and employee* [Italic supplied.] exists between the insurance company and the agent, and inasmuch as the insurance company is under contract to pay the agent commissions on all policies of insurance secured by him, no distinction can logically be made between a commission paid to the agent on account of a policy written on his own life and a commission paid to the agent on account of a policy written on the life of some one else. The commission is paid to the agent as compensation for services rendered as an employee, i.e., on account of business obtained, regardless of whose life is insured, and is 'gain derived from labor,' and therefore taxable income. * * * "

That ruling is specifically limited to cases where "the relationship of employer and employee exists between the insurance company and the agent." Indeed the ruling is explicit that a contrary result obtains where "the relationship of employer and employee does not exist."

That ruling remained in effect without change until 1955. Thus, in view of petitioner's status as a broker rather than as an employee, what we have here is a ruling of many years standing in which the reduction in cost of the broker's own insurance does not appear to have been regarded as income.

To be sure, a ruling was issued in 1955, after the tax year here involved, in the course of which it was stated without amplification that insurance salesmen who might be considered independent contractors are like other salesmen who might become entitled to a commission on their own policies, and that such commission constitutes income to the salesmen. Rev. Rul. 55–273, 1955–1 C.B. 221. That ruling manifestly cannot be squared with the theory of the earlier ruling as applied to brokers. The basic question involved is whether the so-called commission was compensatory. We need not pass upon whether the earlier ruling was correct as applied to an employee. The case before us involves a broker, not an employee, and we are satisfied on the record before us that the so-called commissions in controversy herein were not in fact nor were they intended to be compensatory in nature. A contrary result would discriminate against insurance brokers and in favor of all other types of brokers and other persons in comparable situations. The revenue laws should

be interpreted in accordance with the substance of the transaction, and the mere fact that there might be some peculiar or esoteric insurance vocabulary that may be applied to the situation should not be employed to create income under the tax laws where none was intended. Our recent decision in *Kenneth W. Daehler*, 31 T.C. 722, points the way to the correct disposition of the present controversy. We think a like result is called for here.

The decision in *Ostheimer* v. *United States*, 160 F. Supp. 669 (E.D. Pa.) on appeal (C.A. 3), involving commissions with respect to policies on the lives of the taxpayer's former partner, three key employees, and his children, proceeds upon the assumption that the result there reached was required by administrative practice beginning in 1915. However, that assumption is incorrect to the extent that it pertains to a broker. Without expressing any view as to whether a valid distinction exists between the two cases, we are satisfied that there has not been a realization of taxable income in the instant case.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

BRUCE, *J.*, concurs in the result.

PIERCE, *J.*, dissents.

---

MULRONEY, *J.*, concurring: I concur in the result but, because I have some doubts about what is said in the Opinion as to the limitation of the rulings relied upon by respondent (T.D. 2137, 17 T.D. 48); G.C.M. 10486, XI–1 C.B. 14), I would prefer to rest the decision upon the ground that said rulings were unauthorized. I realize that administrative rulings, particularly those of long standing, should not be set aside if there is any reasonable basis for them. However, after careful study, I cannot find any support for these rulings.

I do not think an ordinary salesman of goods or property, who derives his compensation by way of commission on sales to purchasers, can be said to receive a commission, or any taxable income, when he buys that which he has engaged to sell and remits the net amount (gross sales price minus commission) to his principal. This is the full force of our holding in *Kenneth W. Daehler*, 31 T.C. 722. A life insurance salesman is, I feel, no different from any other salesman of goods or property, or even of fire insurance contracts, or casualty insurance contracts.

If the salesmen of property, or of insurance other than life, realize no taxable income when they buy on their own behalf, why should

there be a different rule for life insurance salesmen? I know of no reason to justify the distinction and would hold the rulings invalid.

FISHER, *J.*, agrees with this concurring opinion.

---

HARRON, *J.*, dissenting: The prevailing opinion treats the issue in a manner which is reminiscent of the evolution through the judicial process of concepts of the nature of taxable income and of what constitutes the realization of income. Indeed, the majority view seems to regard the Commissioner's determination as one which serves to extend the frontier of the legal concept of income. Finally, in reaching the conclusion that no income was realized by petitioner, the majority has undertaken, I believe, to reduce the scope of the present legal concepts of income, and has disregarded well established principles defining the nature of income. Also, there has been introduced into the issue raised by the pleadings a question of doubtful validity, namely, whether taxable income is realized from the acquisition of property at "wholesale cost." Such question is not, in my opinion, the one presented for decision here. I am unable to concur with the conclusions that the evidence establishes that petitioner bought insurance on his own life at "wholesale cost"; that he did not earn commissions in the amount of $455.11; that the amount involved is not actually compensatory in nature; and that the net result of the entire transaction was that petitioner realized economic benefits which were not compensatory. Therefore, I respectfully dissent.

It has been said that a definition of income does not aid materially in solving a problem, but that it is advisable to take a realistic view of the facts in a case and to take into account the plain meaning of the word "income." *United States* v. *Kirby Lumber Co.*, 284 U.S. 1. It is necessary here, as in most cases, to consider all of the facts, and they are discussed hereinafter at some length. Also, particular attention is given to the nature of an insurance agent's commissions, to the nature of premiums for insurance, to the policy involved in State statutes which are aimed at preventing discrimination and rebates of premiums, and to the status of the Commissioner's long-standing ruling that, "a commission retained by a life insurance agent on his own life insurance policy is held to be income accruing to the agent." T.D. 2137, *supra*.

It is well known that the commissions of the representative (broker or general agent) of a life insurance company are based upon a percentage of the premiums paid by the insured to the company, and that they are compensation for the representative's services to the company in presenting to it the application for the insurance contract which the company issues. It is well established that such commis-

sions are compensatory and come within the broad definition of gross income contained in all of the revenue acts and codes.[1]

In petitioner's agreements with Occidental and California-Western States it was stated that Minzer was authorized to procure and submit to the company applications for life insurance, and that in consideration for such services the company agreed to pay Minzer commissions on premiums paid to the company in cash by the insured.[2] Whether Minzer is called a broker, which I believe is not significant, or a general agent, he was without any doubt under these contracts a general agent of each insurance company,[3] and all of his commissions were compensation for his services to the life insurance company in procuring and submitting applications for insurance, which the insurance companies were obligated to pay him upon the receipt of cash payments of premiums by the insured individuals. No distinction was made in the agency contracts between an application for insurance on Minzer's life and an application for insurance on the life of any other individual; or between a premium paid by Minzer and one paid by someone else; or between the commissions to be paid to Minzer for his submitting an application for insurance on his own life and those to be paid upon his submitting an application for insurance on the life of another person. Furthermore, both Minzer and the two insurance companies made no distinction with respect to the above. Minzer, in his income tax return for 1954, reported the receipt of the disputed

[1] *Edwards* v. *Keith,* 231 F. 110 (C.A. 2, 1915) ; *Woods* v. *Lewellyn,* 252 F. 106 (C.A. 3, 1918).; *Bishop* v. *Commissioner,* 54 F. 2d 298 (C.A. 7, 1931) ; *Parker* v. *Routzahn,* 56 F. 2d 730 (C.A. 6, 1932) ; *James M. Stokes, Jr.,* 22 B.T.A. 1386 ; *Gerald A. Eubank,* 39 B.T.A. 583, affd. 311 U.S. 122. The cited cases involved taxation of renewal commissions on renewal premiums paid by the insured, but the principle applies equally to the first-year commissions on the first-year premiums which are paid.

[2] The agreement with Occidental provides, in part, as follows :

"You are hereby authorized, provided and while you have a proper license authorizing you to solicit insurance for Occidental Life Insurance Company of California, * * * to procure and submit applications for life insurance in the Company subject to the rate book and the rules and regulations of the Company, * * * and the terms and conditions of this Agreement. In consideration of such service, the Company agrees to pay you a commission in accordance with the Schedule below on premiums collected and paid to the Company in cash on account of policies issued upon said applications, as follows, to wit :"

The agreement with California-Western States provides, in part, as follows :

"The Company hereby appoints said second party its special agent for the purpose of canvassing for applications for insurance on the lives of individuals, and of performing such other duties in connection therewith as the officers of the Company may in writing expressly require of him * * *

* * * * * * *

"Twentieth : Until further notice the Company shall pay and the Agent shall receive under this contract, but subject to all of its terms and conditions, the following compensation only, to wit :"

[3] The parties have not stipulated that the relationship of Minzer to any of the life insurance companies he represented was that of a broker. During the taxable year 1954 petitioner represented eight insurance companies, including the two companies involved. It has been stipulated that petitioner "was engaged in the business of soliciting and writing life insurance and casualty insurance *as a representative of six life insurance companies* and *under brokerage arrangements with two firms writing casualty insurance.*" (Italic supplied.) The Court has made a finding that, "Petitioner was an insurance broker." This represents the Court's conclusion.

commissions which accrued to him on the insurance policies on his own life, in the amount of $455.11, by including that amount in the total sum of all commissions received from all the insurance companies he represented, namely, $43,196.31. However, he deducted $455.11, and included in his taxable income only the net amount of $42,741.20. California-Western States charged Minzer with having earned the full amount of the commissions on the life insurance policies issued on Minzer's life, $119.41.[4] The petitioner has not shown that Occidental did not do the same with respect to the commissions of $335.70.

Minzer was free to apply to any insurer for insurance on his own life. When he applied to Occidental and California-Western States for the issuance by them of insurance contracts on his own life, he rendered a service to each company for which each was obligated, under the agency contract, to pay him compensation for such service, consisting of commissions. The commissions were compensatory. I believe that no distinction can be made between commissions earned by Minzer on the insurance, for which he submitted the application, on his own life, and commissions earned by submitting applications for insurance on the lives of others. The nature of both commissions is the same; they are all earned income. *Ostheimer* v. *United States, supra; Rogers* v. *Ramey*, 198 Ky. 138, 248 S.W. 254; *Edwards* v. *Keith*, 231 F. 110 (C.A. 2, 1915), see note 1; *Gerald A. Eubank*, 39 B.T.A. 583, affd. 311 U.S. 122, see note 1. Minzer was not rendering a service to himself when he applied to each company for insurance on his own life. He did not pay himself for submitting the applications for insurance on his own life; rather, the insurance companies paid him, and they did so on exactly the same basis as they paid him for submitting applications for insurance on the lives of others.

Not only were the commissions involved necessarily compensation for petitioner's services, and, therefore, taxable income to him, but equally, the entire amount received as life insurance premium by each insurance company must have been premium and no part thereof could have been deducted for a so-called discount, bargain purchase, or to arrive at a so-called wholesale cost. There is no proof that under

---

[4] There is attached to the stipulation of facts a letter from California-Western States to a regional counsel of the Commissioner which states as follows:

"This is a reply to your letter of January 13, 1958. This company reports all commissions from policies on an agent's own life as commissions earned by him for the calendar year in which commissions are paid by the company or retained by the agent.

"You have asked for verification of the commissions paid to Mr. Minzer on his own life during the year of 1954. You have asked further whether the amount was actually sent to him or whether the premiums were discounted prior to remittance.

"We do not permit our agents to discount premiums prior to remittance, except on first policy year policies [sic]. However, in such first year cases, if the net premium is remitted, we do charge the agent with having earned the full amount of such commissions. Such commissions are, therefore, included in the amounts as reported on our Forms 1099 or Forms W-2 of which copies are sent to our agents as well as to the U. S. Treasury Department."

the contracts of insurance on Minzer's life, under which he was obligated to pay premiums to the companies, the regular amount of the premium was reduced in any respect, or, for example, was computed in an amount which eliminated the sum which the insurance company was obligated to pay Minzer as a commission under his general agency contract. Minzer was required under the insurance contracts on his life to pay premiums in the same amount and at the same rate as was required by the terms of insurance contracts on the lives of others. That no part of the premiums for insurance on petitioner's life could have been deducted for a so-called discount flows, not alone from the statutes commonly in force forbidding discrimination and rebating,[5] but basically from the whole concept of life insurance which the present Opinion seems completely to ignore.

It is rudimentary that the actuarial concept of life insurance is the placing of all risks similarly situated in a class for which insurance reserves will be established and maintained. This must be done for all of the class equally since any member of the class may at any time participate in some way in the established reserve. Not only the payment at death but intervening surrender and loan values and even the distribution of dividends have as their genesis this participation in a mutual reserve. It is hence inadmissible to assume that any individual insured could be paying a smaller premium for the same protection than anyone else.[6] If this is so, all of the money received by the insurance company was premium and what petitioner received was necessarily something other than a discount.

The "true premium," to be sure, for any insured class, see IX Encyc. Soc. Sci. 464, is computed less assumed commission and other author-

---

[5] In a similar case, the court noted in *Ostheimer* v. *United States,* 160 F. Supp. 669, as follows:

"In fact, it would be a violation of the law for an insurance company to have sold insurance to him at a lower rate than that charged other policyholders."

The same is true in the instant case. The Texas statute prohibits all discrimination by an insurance company with respect to premiums and any rebate of premiums. Tex. Ins. Code art. 21.21 (Vernon), provides, in part:

"No insurance company of any kind doing business in this State shall make or permit any distinction or discrimination in favor of individuals between the insured of the same class and of equal expectation of life in the amount of, or payment of, premiums * * * nor shall any such company, or any officer, agent, solicitor or representative thereof, pay, allow, or give, or offer to pay, allow or give directly or indirectly, as an inducement to insurance, any rebate of premiums payable on the policy * * *"

The statute provides for a criminal penalty for its violation. The reason it is not rebating of a premium for an insurance agent to apply for insurance on his own life and receive a commission for doing so is because the commission is for services performed. See *Rogers* v. *Ramey,* 198 Ky. 138.

[6] See 3 Couch, Insurance sec. 584, where the following is stated:

"* * * the object or intent of statutes aimed against discriminations and rebates is that uniform rates shall be established and maintained, so as to secure to all persons equality as to burdens imposed, as well as to benefits derived, by preventing discrimination by insurers in favor of individuals of the same class, either as to premiums charged or dividends allowed, or, as it has been stated, in order that prospective insurants of the same class shall not be unfairly treated or discriminated against, by inducements being given to one of such class, which are not available to all therein. * * *"

ized "loading charges." But under the basic concept of insurance this must result for the class as a whole and not for each individual member. It follows that petitioner's share in the reserves for purposes of surrender, loan, and other values continues to be the same as that of any other member of the insured group. Under the present Opinion's theory, however, he paid less for it than his associates although what he received had a value equivalent to the full premium. *Guggenheim v. Rasquin*, 312 U.S. 254.

Of course, this is not what actually occurred here. Petitioner paid the insurer the full premium for the insurance value he received and was paid in turn what the insurer owed him for his services, just as he might have been paid rent, or interest, or a legal fee if their relationship had called for it. See, e.g., *Otis v. Provident S. L. Assn. Soc.*, 173 Ill. App. 70. This is the theory on which, under State statutes prohibiting discrimination and rebates, a broker is permitted to offset his commission against the premium due. Whether it is described as payment of premium and a counterpayment of commission, or a payment part in cash and part in services worth the difference, see *Rogers v. Ramey, supra*, it is clearly compensatory and the result is the same. It is of no consequence that petitioner may have been an "agent" instead of an "employee" of each insurance company. In either event, he rendered personal services and was paid the agreed compensation for them. *Gerald A. Eubank, supra*, see note 1. To hold otherwise does violence not only to the principle that property rights are determined by State law, *Blair v. Commissioner*, 300 U.S. 5, and *Helvering v. Stuart*, 317 U.S. 154, but places the tax authorities in the position of contravening a clearly defined State policy. *Tank Truck Rentals, Inc.*, 356 U.S. 30, affirming 26 T.C. 427.

The reasoning employed by the present Opinion to the effect that part of the obligation of Minzer to pay premiums on his own life insurance was in effect "forgiven" by way of some legerdemain which wiped out the commissions due him on such insurance so that any "economic benefit" received by Minzer was "not compensatory," does violence to the doctrines of realization of income and of constructive receipt of income.[7]

The present Opinion holds directly contrary to the ruling of the Treasury Department, T.D. 2137, *supra*, which has stood unchanged for more than 43 years. This ruling was only reaffirmed in 1932 and 1955 by the respective rulings G.C.M. 10486, *supra*, and Rev. Rul. 55–273, *supra*. Treasury regulations, rulings, and interpreta-

---

[7] See the following: *Corliss v. Bowers*, 281 U.S. 376; *Old Colony Trust Co. v. Commissioner*, 279 U.S. 716; *United States v. Boston & Maine Railroad*, 279 U.S. 732; *Burnet v. Wells*, 289 U.S. 670; *Helvering v. Stuart*, 317 U.S. 154; *Helvering v. Horst*, 311 U.S. 112, 115; *Harrison v. Schaffner*, 312 U.S. 580; *Acer Realty Co. v. Commissioner*, 132 F. 2d 512, 516.

tions which are consistent with statutes and have remained in effect for a long period of time are deemed to have received congressional approval and have the effect of law. *Helvering* v. *Winmill*, 305 U.S. 79; 1 Mertens, Law of Federal Income Taxation sec. 3.20. The determination of the Commissioner should be sustained.

OPPER, WITHEY, and ATKINS, *JJ.*, agree with this dissent.

---

TRAIN, *J.*, dissenting: I respectfully dissent.

The essential question presented here is the scope of the power to tax incomes. Employing almost the exact words of the Sixteenth Amendment, section 61(a) of the Internal Revenue Code of 1954 defines gross income as meaning "all income from whatever source derived." Its predecessor, section 22(a) of the 1939 Code, defined the same term as including "gains or profits and income from any source whatever." In enacting the income tax, Congress is presumed to have intended to exercise its power to tax incomes to the fullest extent permitted by the Sixteenth Amendment (*Eisner* v. *Macomber*, 252 U.S. 189, 203 (1920)), subject only to such limitations and qualifications as the Congress has itself provided specifically by way of exclusions, deductions, credits, or other statutory adjustments. Since nowhere in the revenue laws does there appear any specific or even implied exclusion from gross income of the types of commissions involved here, the majority opinion must be based on the conclusion that those commissions are not "income" in the constitutional sense. With this conclusion, I disagree. Aside from nice questions of whether the commissions represent compensation for services, can there be any substantial doubt that this taxpayer has realized gain by their receipt? I think not. The majority opinion assumes that the commissions represent an "economic benefit" to this taxpayer. Of course, "gain" in the theoretical economic sense does not necessarily connote "gain" within the scope of the income tax. Unrealized appreciation in the value of a capital asset would be a case in point. But here there is no lack of realization, and here the amount of gain is not theoretical or conjectural but actual in terms of dollars and cents. Within the common understanding of the term, the commissions represented gain to this taxpayer and, thus, constitute income within the meaning of section 61(a).

Having found that an employer-employee relationship did not exist under the facts of this case, the majority has concluded that the payments in question are not compensatory but represent reductions in cost and, thus, are not income. I believe that this conclusion is faulty on three grounds.

First, I know of no rule to the effect that payments for services are not compensatory in the absence of an employer-employee rela-

tionship. I assume that the commissions this taxpayer receives with respect to insurance sold on the lives of others are compensatory and represent taxable income even though he may not be an employee of the companies concerned. Does the majority suggest that the payments here in question were gifts? The record would hardly support such a conclusion. Clearly, the commissions were paid by the companies concerned because the taxpayer placed policies of insurance with them.

Secondly, I know of no rule to the effect that reductions in cost cannot be compensation. The majority refers to the case of a brush salesman whose contract of employment permits him to make purchases at a price less the ordinary commission. There may be persuasive policy reasons for not subjecting such benefits to the income tax, but I think it is far from clear that they could not constitutionally be taxed. Such reductions in cost may be *de minimis* under some circumstances but could well be substantial in others. I certainly cannot subscribe to the majority's dictum that they cannot be taxed. In this connection, it may be observed that these and other forms of so-called "fringe benefits" are assuming growing significance in our economic system, and I believe that this Court should not suggest hastily that such benefits are insulated from the taxing power.

Thirdly, while I have no doubt that these payments represented compensation, I know of no rule to the effect that receipts are "income" only if compensatory, although the majority appears to assume the existence of such a rule. Section 61(a) simply lists "[c]ompensation for services, including fees, commissions, and similar items" as one example of what is included in the term "income." The report of the Committee on Ways and Means on the 1954 Code contains the following statement with respect to section 61: [1]

This section corresponds to section 22(a) of the 1939 Code. While the language in existing section 22(a) has been simplified, the all-inclusive nature of statutory gross income has not been affected thereby. Section 61(a) is as broad in scope as section 22(a).

Section 61(a) provides that gross income includes "all income from whatever source derived." This definition is based upon the 16th Amendment and the word "income" is used in its constitutional sense. Therefore, although the section 22(a) phrase "in whatever form paid" has been eliminated, statutory gross income will continue to include income realized in any form. Likewise, no change is effected by the elimination of the specific reference to compensation of the President and judges of courts of the United States, and the compensation of such individuals will continue to be taxed in the same manner as that of other taxpayers. In view of the fact that certain types of income are excluded from gross income by other sections of the income tax subtitle of the new code, section 61(a) contains a clause excepting such income from the general definition of gross income.

---

[1] H. Rept. No. 1337, 83d Cong., 2d Sess., pp. A18, A19. To same effect see the report of the Committee on Finance, S. Rept. No. 1622, 83d Cong., 2d Sess., pp. 168, 169.

> After the general definition there has been included, for purposes of illustration, an enumeration of 15 of the more common items constituting gross income. It is made clear, however, that gross income is not limited to those items enumerated. Thus, an item not named specifically in paragraphs (1) through (15) of section 61(a) will nevertheless constitute gross income if it falls within the general definition in section 61(a).

The committee report quoted above makes abundantly clear that taxable income includes "income realized in any form." Thus, the essential question is not whether the payments are compensatory in some narrow, technical sense but whether the taxpayer realized gain by their receipt.

The majority opinion points out that the internal revenue ruling in effect in 1954 was limited by its terms to cases where an employer-employee relationship existed. In support of that position, the ruling cited *Eisner* v. *Macomber, supra.* If that was in fact the intended construction of the ruling, then it was based on a mistake of law and the Commissioner was not bound by it. *Automobile Club* v. *Commissioner*, 353 U.S. 180 (1957). Certainly, as I have attempted to point out above, the power to tax is not so limited as such a construction assumes and *Eisner* v. *Macomber* does not stand for such a principle. However, I believe that the 1954 ruling should be construed as referring not simply to the technical common law relationship of employer and employee but as intended to refer to contractual arrangements for services, including those of employer-employee. This interpretation is borne out by the revised ruling issued in 1955 which I consider to have been simply a clarification of the prior ruling.

The majority opinion clearly implies that a different result would be reached if the taxpayer had in fact been an employee. However, it concludes that he was a broker, the distinction being based apparently on the fact that he sold insurance for more than one company. I believe that such disparate tax treatment in such closely analogous circumstances is untenable in principle and in practice, and that the palpable inconsistency of result demonstrates the illogic of the majority's conclusion. If such commissions would be taxable compensation when received by an agent serving one company, I am unable to see how they somehow assume a different character in the hands of an individual selling insurance for several companies.

Finally, I am not persuaded by the analogies which the majority opinion seeks to draw from the treatment of stock brokers or of real estate brokers who purchase on their own account. These examples do not seem in point to me. If they did pay a commission on their purchases, it would only be to themselves, a transfer from one "pocket" to another. Here, the commissions are not payable by the insurance agent to himself but are paid to him pursuant to a contractual obligation by the very companies on whose behalf he sells

insurance. In any event, even if proper examples could be cited, the mere fact that other types of receipts are not taxed, either by virtue of legislative or administrative action, does not confer upon the courts the power to extend such exclusions to other receipts on the basis of some supposed requirement of fairness. That is not the judicial function.

The Commissioner's determination should be sustained.

---

DRENNEN, *J.*, dissenting: I respectfully dissent.

From the record in this case, it appears that the only reason the petitioner was able to obtain life insurance on his own life from a company whose insurance he was selling, at a net cost to himself of less than the standard premiums, was because the insurance company had contracted to pay him a commission on all its insurance he sold or placed. It does not appear that the insurance company agreed with petitioner that he could buy its insurance at less than the standard price. I therefore believe the amounts here in controversy, whether actually paid to petitioner or simply deducted from the gross premiums he remitted, represent compensation to petitioner, and are therefore taxable income to him. The fact that petitioner may have been a "broker" rather than an "agent" does not change the taxable character of the income or economic benefit received.

WITHEY, *J.*, agrees with this dissent.