ESTATE OF MARIA ASSMANN, FIDELITY UNION TRUST COMPANY AND FRANK A. ASSMANN, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 26883.    Promulgated March 28. 1951.

*Samuel D. Williams, Esq.*, for the petitioners.
*Lester H. Salter, Esq.*, for the respondent.

634

OPINION.

DISNEY, *Judge:* Our only problem here is whether or not the real estate sold was a capital asset, within the intendment of section 117 (a) of the Internal Revenue Code.[1] The answer will determine whether the loss taken by Maria Assmann upon the sale is to be limited, under section 117 (d) (2) [2] to $1,000,[3] as determined by the Commissioner. There is no disagreement as to basis or amount received upon sale.

We need not again detail the facts set forth above. The gist of the petitioners' contention is that the property sold having been inherited, its tax status was then neutral, that its tax status thereafter is dependent upon the intention of the inheritor-taxpayer, and that it was her intent to rent or dispose of the property, as shown by her permanent removal therefrom within a few days after her husband's

[1] SEC. 117. CAPITAL GAINS AND LOSSES.
  (a) DEFINITIONS.—As used in this chapter—
  (1) CAPITAL ASSETS.—The term "capital assets" means poperty held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (l), or an obligation of the United States or any of its possessions, or of a State or Territory, or any political subdivision thereof, or of the District of Columbia, issued on or after March 1, 1941, on a discount basis and payable without interest at a fixed maturity date not exceeding one year from the date of issue, or real property used in the trade or business of the taxpayer;

•    •    •    •    •    •    •

[2] SEC. 117. CAPITAL GAINS AND LOSSES.
  •    •    •    •    •    •
  (d) LIMITATION ON CAPITAL LOSSES.—
  •    •    •    •    •    •
  (2) OTHER TAXPAYERS.—In the case of a taxpayer, other than a corporation, losses from sales or exchanges of capital assets shall be allowed only to the extent of the gains from such sales or exchanges, plus the net income of the taxpayer of [of] $1,000 whichever is smaller. For purposes of this paragraph, net income shall be computed without regard to gains or losses from sales or exchanges of capital assets. If the tax is to be computed under Supplement T, "net income" as used in this paragraph shall be read as "adjusted gross income."

[3] No gains from sales or exchanges of capital assets are here involved.

death, her prompt direction that the property be rented or sold, the razing of the property seven months later after advice that sale would thereby be facilitated, and her failure to make any personal use of the property from time of her removal to its sale. Therefore, it is argued, the petitioners are entitled to a full deduction of the loss sustained in a transaction entered into for profit, under section 23 (e) (2) of the Internal Revenue Code. Reliance is placed upon *Estelle G. Marx*, 5 T. C. 173; *N. Stuart Campbell*, 5 T. C. 272; *Solomon Wright*, 9 T. C. 173; and *George W. Carnrick*, 9 T. C. 756.'

The respondent, on the other hand, argues, in substance, as follows: that the only category of non-capital asset specified in section 117 (a) of the Internal Revenue Code which the petitioners attempt to apply is "real property used in the trade or business of the taxpayer," that the property was not so used; therefore deduction for loss must be limited to $1,000 under section 117 (d) (2). Respondent cites *Beck* v. *Commissioner*, 179 Fed. (2d) 688, affirming a Memorandum Opinion of this Court, and distinguishes *N. Stuart Campbell*, *supra*, as one where the inherited property was listed for rent or sale rather than merely for sale as in this case, so that an effort, though fruitless, to rent was held to constitute trade or business. Here, he points out, though the petitioner asserts "undeviating intention" of the decedent to *rent* or dispose of the property at the earliest possible moment, it is stipulated that "No effort was ever made to rent the property nor was it ever rented." He argues also that claims of loss under section 23 (e) (2), as the petitioners suggest this sale to be, are subject to the limitation provided by section 117 (d) the same as claims of loss under section 23 (e) (1). He adds that the exclusion from "capital assets" of real property used in trade or business is limited to property used in trade or business *at the time of sale*, under Regulations 111, section 29.117–1, and that, at the time of sale of this property, it was vacant property, not used in trade or business.

We first note that section 117 (d) (2) is general in its terms, applying its limitation broadly to "losses from sales or exchanges of capital assets," therefore that there is not the distinction. suggested by petitioners, between losses from sales "incurred in trade or business," under section 23 (e) (1), and those "incurred in any transaction entered into for profit, though not connected with the trade or business," under section 23 (e) (2), which the petitioners (specifically, on brief agreeing that the taxpayer "had no trade" and "had no business") claim this loss to have been. Not only is section 117 (d) (2) general, but section 23 (g) is equally so: it provides that losses from sales or exchanges of capital assets shall be allowed only to the extent provided in section 117. No distinction is made between losses under section 23 (e) (1) and 23 (e) (2), nor does Regulations 111, section

29.23 (g)–1 make such distinction. The regulations are not here attacked.

Section 117 (a) (1) provides, initially, that the term "capital assets" means "property held by the taxpayer." The property here involved was held by the taxpayer. It was therefore a capital asset unless shown to be within the exceptions, stated immediately following the above language. Since the petitioners on brief specifically disclaim any contention that the property was stock in trade, because the taxpayer "had no trade" or property held for sale in the ordinary course of business, because the taxpayer "had no business," the only remaining exception to "capital assets," stated in section 117 (a) (1), is "real property used in the trade or business of the taxpayer." However, in arguing distinction of *Beck* v. *Commissioner*, *supra*, relied on by respondent, the petitioners on brief state:

The claim by the Becks was that their loss was one *sustained in their trade or business*. In the instant case no such claim is or could be made. Taxpayer was never in business and never has claimed she was. Her claim was for a loss sustained in *a transaction entered into for profit*. Of course the transaction out of which the taxpayer sustained the loss was a business transaction, but it was an isolated piece of business entered into for a sole purpose—to make a profit.

In the face of these statements, on brief, that the decedent had neither trade nor business, it is logically difficult to see how any exception from "capital assets" can be applied here. If one has no trade or business how can it be contended that real property is used in trade or business? However, since the above statements were, in part, in connection with the earlier exceptions as to "stock in trade" and property held "primarily for sale to customers in the ordinary course of his trade or business," and since "real property used in the trade or business" is the only exception petitioners can mean to invoke, we proceed to examine the argument made.

It amounts, it seems, to this: That the decedent's intent governs, that she never intended to devote the property to personal use but intended to rent or dispose of it, which was done, in an "isolated piece of business entered into for a sole purpose—to make a profit." It is stipulated, however, that though the decedent immediately on removal from the property directed her son to rent or sell the property and that it was immediately listed for sale, "No effort was ever made to rent the property nor was it ever rented," also that "The property was never put to use by the decedent from the date of her removal" until its sale. From these stipulated facts it appears: First, that the petitioners are not justified in contending that it was decedent's intent to rent or sell. She merely directed her son either to rent or sell. The property was "forthwith" listed for sale, and no effort was ever made to rent, nor was it ever rented. This status continued from about February 19,

1936, to about January 1948—more than eleven years. If she had any intention of renting, it was very brief, for listing for sale was "forthwith" with no effort at any time to rent. Whether she, or someone else, listed the property for sale does not appear. To conclude that though no effort was made to rent, she intended nevertheless, for eleven years, to rent, borders upon the absurd. We conclude that she did not so intend for more than a very short time. Second, the property was never put to use by the decedent after the date of her removal from it. This plainly negatives the requirement of section 117 (a) that the real property, to be a non-capital asset, must be used, in the trade or business.

In short, the stipulation and petitioners' concessions on brief contravene all three of the elements of the statutory expression: The real property was not used, the decedent had no trade, the decedent had no business. The petitioners nevertheless contend that there was sale with profit motive, making the loss one from a non-capital asset. Considering the cases cited for such contention, we find that *N. Stuart Campbell, supra,* involved sale of an inherited house and land. We first held that the loss was deductible as against respondent's contention that there was no transaction entered into for profit under section 23 (e) (2), for it had been stipulated that the inherited property was, as soon as legally possible after inheritance, placed in the hands of real estate agents to sell as soon as possible or rent if unable to sell promptly, and that two other real estate firms tried to sell the property. We said, therefore, that the loss was allowable deduction "except to the extent that it is limited by section 117 of the code." The petitioner indeed conceded that the land itself was "capital asset" and that the loss thereon was capital. Here the respondent does not deny deductibility, but only deductibility as a non-capital loss, so that, as to the land there involved, the *Campbell* case is of no value to the petitioners here. As to the building in the *Campbell* case, the petitioner contended for ordinary loss and it was allowed, on the ground, in effect, that the building was "property used in the trade or business of a character which is subject to the allowance for depreciation," apparently upon the theory that the efforts to rent constituted business. The instant case is clearly distinguishable because it involves no building, no efforts to rent, and no business, under petitioners' concessions. Instead of contending, as in the *Campbell* case, that the efforts at renting a building constituted business, here petitioners affirm that there was loss in an isolated business transaction entered for profit, disclaiming at the same time any claim of being in business. *Estelle G. Marx, supra,* also relied on by petitioners, does not touch the present question of capital or non-capital loss, for it merely decided that the sale was in a transaction entered into for profit—which the respondent does not here deny. He merely says that the limitation of section

117 (d) applies regardless of whether the transaction was one for profit, for it involved a capital asset—a point nowhere mentioned in the *Marx* opinion. The situation in *George W. Carnrick, supra,* is in pertinent part similar to that in the *Marx* matter. The prime question was whether there was transaction entered for profit, on sale of a house and lot. There was active effort to rent the property, or sell it, so that, as to the house only. there was business, and ordinary loss was allowed; as to the land—which only we have here—only capital loss was allowed. *Solomon Wright, supra,* did involve land left after the house thereon was destroyed, in a way similar to the instant situation; and there the question was whether loss was capital or ordinary. But there the house had been for several years prior to its destruction by hurricane, in September 1938, rented to tenants by the petitioner, who devoted a small part of his time to real estate activities consisting of renting the house in question and one other. Early in 1939 he placed the property for sale with real estate agents and it was sold in 1943. In holding for the petitioner we said: "Its character as real property used in his business was not lost and did not change under the facts as stipulated." Obviously, the case has no application here, where decedent had no real estate activities, the property had never been rented, she never tried to rent, instead razed the building and held the land for sale for eleven years.

*Beck* v. *Commissioner, supra,* relied upon by the respondent, involved a half interest in vacant lots, inherited from one engaged, in part, in real estate activities. As in this case, it was listed for sale but never for rent. Various plans were made for using the property for business purposes, but no such use eventuated. The half interest in the property was finally sold, for a small sum to a co-owner. In affirming this Court's conclusion that the property was not real estate used in trade or business, the United States Court of Appeals said:

> It is evident that the taxpayers were not engaged in trade or business in which the real estate was used; they never appropriated the lot to the trade or business of developing property—actually it was not put to any use, for it was vacant and unimproved; * * *

The petitioners, on brief, seek to distinguish the *Beck* case as a claim of loss sustained in trade or business. Reference to our opinion discloses, however, that we were there, just as here, construing the applicability of the last clause of section 117 (a) (1), providing as exception to capital assets "real property used in the trade or business of the taxpayer"; and though petitioners here assert distinction from the *Beck* case, between claims under section 23 (e) (1) and 23 (e) (2), we have above seen that the limitations imposed by section 23 (g) and section 117 (d) apply alike to any losses under section 23 (e), if from sales or exchanges of capital assets. We discern no distinction in principle between this case and the *Beck* matter. The fact that here

the vacant property had at one time, some eleven years before sale, been improved by a house is immaterial, under Regulations 111, section 29.117–1 limiting the exclusion from "capital assets" of property used in trade or business "to such property used   *   *   *   in the trade or business at the time of the sale   *   *   *."

We conclude and hold that the real property was a capital asset and that the Commissioner did not err in limiting the loss on sale thereof under section 117 (d).

Reviewed by the Court.

*Decision will be entered for the respondent.*