John Green and Roslyn Green v. Commissioner.
Green v. Commissioner
Docket No. 3294-62.
United States Tax Court
T.C. Memo 1964-113; 1964 Tax Ct. Memo LEXIS 220; 23 T.C.M. (CCH) 649; T.C.M. (RIA) 64113; April 28, 1964
Sidney J. Matzner, 9465 Wilshire Blvd., Beverly Hills, Calif., for the petitioners. Robert L. Gnaizda, for the respondent. FAY
Memorandum Opinion FAY, Judge: The Commissioner determined a deficiency in petitioners' *223 income tax for the taxable year 1957 in the amount of $3,124.07. The parties have agreed to certain adjustments with respect to the deficiency. [1] The principal issue for decision is whether the loss resulting from the sale by petitioners of a piece of real property is deductible in full as an ordinary loss. If this issue is decided adversely to petitioners, then a secondary issue arises concerning whether the petitioners elected to capitalize certain interest payments. If petitioners did not elect to capitalize certain interest payments, then a further question arises as to when certain interest was paid. All of the facts have been stipulated and are so found. Petitioners are husband and wife with their residence at 169 North McCadden Place, Los Angeles, California. They filed their joint income tax return for the taxable year 1957 with the district director of internal revenue at Los Angeles, California. Petitioner John Green is a practicing physician. Of the $56,141.91 shown on petitioners' return for 1957 as adjusted gross income, $49,222.48 was derived *224 from his medical practice. On or about December 6, 1955, petitioners purchased a note secured by a second deed of trust on property located at 4814 Vista De Oro, Los Angeles, California. The purchase price was $13,718,06. The maturity value of the note at the time of purchase was $17,147.57. Petitioners, during 1955 and 1956, received five payments of $109 each on the note. Of the $545 received, $426.93 represented a reduction of the principal balance of the note. No other payments were received by petitioners on the note. Petitioners thereafter foreclosed on the security and acquired title to the property which secured the second deed of trust. Petitioners made the following expenditures regarding said property in the years as indicated: 1956
1957
Painting
$ 612.00
Attorney fees
100.00
$100.00
Plumbing
61.25
Property taxes
549.54
126.55
Insurance
9.29
Water
2.50
7.25
Gardener
85.00
70.00
Termite
7.50
Interest
141.11
Total
$1,358.33
$513.66
In addition to the above expenditures, petitioners made payments to Home Savings & Loan Association on the first deed in the total amount of $2,014. Payment was made by three checks, one for *225 $1,632 and two checks for $191 each. Petitioners' check for $1,632 was dated December 12, 1956, but did not clear the bank until January 17, 1957. The two checks for $191 were dated with a 1957 date. The payments to Home Savings & Loan Association consisted of the payment of principal and interest as follows: Principal
Interest
Total
$581.93
$1,050.07
$1,632.00
68.10
122.90
191.00
68.10
122.90
191.00
$718.13
$1,295.87
$2,014.00
Immediately upon acquisition of the property, petitioners listed it for sale. The property was never resided in by the petitioners. Petitioners' return for 1957 does not reflect the receipt of rental income. The property was sold on March 29, 1957, for $33,083.87. Petitioners' return for 1957 does not reflect the sale of any other piece of real property during the year. At the date of sale the principal balance of the first deed of trust was $19,243.56, which amount was paid out of the sale proceeds. The expenses of sale were as follows: Commissions
$1,650.00
Title Insurance
144.00
Recording
4.50
Internal Revenue stamps
15.40
Escrow fee
53.00
Insurance
.50
Miscellaneous fee
10.00
Total
$1,877.40
*226 Petitioners did not separately deduct any of the expenses incurred in connection with the property either on their 1956 return or on their 1957 return, but instead they took into account all such expenses in computing the loss on the sale of the property. Petitioners deducted the loss on their 1957 income tax return as an ordinary loss. Petitioners did not attach to their return for 1957 a statement indicating that they elected to treat interest expense in connection with the real property as a capital expenditure. Respondent adjusted the amount of the loss and determined that the loss was a capital loss. In computing the amount of the loss, respondent treated all the expenditures made by petitioners in both 1956 and 1957 as capital expenditures. [2]
Petitioners' primary position is twofold: (1) that the loss on the sale of the piece of real *227 property was a loss on a transaction entered into for a profit and is deductible in full under section 165(c)(2); [3] and (2) that the real property sold was a "section 1231 asset" [4] and the loss is therefore deductible in full. Respondent claims that the real property was a capital asset as defined in section 1221[5] and, accordingly, the loss was a capital loss subject to the limitations of section 1211(b). [6] We must agree with respondent. *228 The gist of petitioners' argument is that a transaction which falls under section 165(c)(2) is not limited by section 165(f)[7] or section 1211(b). This is where petitioners err. The limitations imposed by sections 165(f) and 1211 apply alike to any losses under section 165(c) if from sales or exchanges of capital assets. Estate of Maria Assmann, 16 T.C. 632 (1951). [8] Whether petitioners are allowed an ordinary loss deduction depends upon whether the real property at the time of sale was not a capital asset in their hands. Section 1221 starts by defining a "capital asset" as "property held by the taxpayer." The property here involved was held by the taxpayers. It was therefore a capital asset unless it can be shown to fall within the exceptions provided for in section 1221. The only possible exceptions petitioners could rely upon are that the property was "stock in trade," "held * * * primarily for sale to customers in the ordinary course of his trade or business," or "property, used in his trade or business." *229 Whether property is "stock in trade" or "held * * * primarily for sale to customers in the ordinary course of his trade or business" is a question of fact. In determining the answer to this question the courts have evolved a number of criteria, none of which are conclusive within themselves. Some of the factors most often relied upon are the intent of the seller with respect to the particular asset in question; the purpose for which the property was acquired, held and sold; the volume of sales; the frequency of sales; the time relation to the purchase and sale; the number of sales and the substantiality of the sales when compared to the taxpayer's other business interests; the amount of advertising; and the holding of a real estate license by the taxpayer. Ralph J. Oace, 39 T.C. 743 (1963). *230 Applying these tests here, we find that petitioner did not acquire the property for the purpose of dealing in real estate. They purchased the realty to protect their investment in the second deed of trust when their debtor failed to keep up the payments on the note. This was an isolated sale. Petitioner John Green was a physician. Eighty-eight percent of his income was from his practice of medicine. The remaining twelve percent was from dividend and interest income. Petitioners presented no evidence, other than the fact of this sale, that they were actively engaged in the real estate business. We hold, on the basis of this record, that petitioners did not hold this property as "stock in trade" nor was the property "held * * * primarily for sale to customers in the ordinary course of his trade or business." Petitioners were not in the trade or business of selling real estate. Ralph J. Oace, supra; and Estate of Maria Assman, supra.It is evident that since petitioners were not in the trade or business of selling real estate, and since there was no evidence introduced indicating that the property was used in John Green's medical business, the property does *231 not qualify as an exception to a capital asset under section 1221(2). Furthermore, for the same reason petitioners derive no benefit from section 1231. Estate of Maria Assmann, supra.Accordingly, the property in the hands of petitioners was a capital asset making the loss derived from the sale thereof limited by section 1211. The cases relied upon by petitioners are either not applicable or are distinguishable on their facts. Henry J. Gordon, 12 B.T.A. 1191 (1928) and Marjorie G. Randall, 27 B.T.A. 475 (1932), cited by petitioners for the proposition that a loss on the sale of residential property which was purchased in a transaction entered into for profit is deductible, are not applicable here. Section 165(f) and 1211 did not become part of our taxing laws until the Revenue Act of 1934. Prior to 1934, losses arising from a transaction entered into for profit were deductible without any limitations even if the property sold was a capital asset. S. Rept. No. 558, 73rd Cong., 2d Sess., pp. 13, 25 (1934), 1939-1 C.B. (Part 2) 586; H. Rept. No. 704, 73rd Cong., 2d Sess., pp. 22, 31 (1934), 1939-1 C.B. (Part 2) 554. *232 The case of John D. Fackler, 45 B.T.A. 708 (1941), affd. 133 F. 2d 509 (C.A. 6, 1943), is distinguishable on the ground that the property there involved was used in the taxpayer's trade or business. The same applies to Leland Hazard, 7 T.C. 372 (1946) and Mary E. Crawford, 16 T.C. 678 (1951). The case of Westmore Willcox, 20 T.C. 305 (1953) held that the loss resulting from the sale of real property was deductible under section 23(e)(2) of the Internal Revenue Code of 1939 (predecessor of 165(c)(2)) as a loss resulting from a transaction entered into for profit. It did not hold that the loss was an ordinary loss. Petitioners, in the instant case, are entitled to a loss deduction under section 165(c)(2). However, the amount of the loss is limited by section 1211. Estate of Maria Assman, supra. Having established that the loss is a capital loss, we must next decide whether petitioners can take a deduction for certain expenditures on their return for the year 1957. Petitioners maintain that if the loss is not an ordinary loss, then all of the expenditures incurred in 1956 and 1957, including the costs *233 of sale, in connection with the property are deductible in full in the year 1957. They cite section 212[9] as authority for this position. Respondent concedes that the expenditures for repairs and real property taxes totalling $272.55 paid in 1957 are deductible. However, respondent claims there is no authority in the Code to allow as deductions in 1957 expenses incurred and paid in 1956. Furthermore, respondent contends the costs of sale are not a deduction but are a reduction of the sales price and must be treated as such. Regarding the interest, respondent argues that petitioners have elected to capitalize interest expenses under section 266[10] and cannot now change their election. We agree with respondent except as to the interest expense. In support of his position, respondent points to the fact that the mere failure of petitioners to deduct the interest expense in either 1956 or 1957 establishes an election under the Code. Respondent pays no mind to his own regulations [11] which provide: If the taxpayer elects to capitalize an item or items under this section, such election shall be *234 exercised by filing with the original return for the year for which the election is made a statement indicating the item or items * * * which the taxpayer elects to treat as chargeable to capital account. * * * There was no statement attached to petitioners' return for the year 1957. The mere failure of petitioners to deduct an item of interest separately on their return for 1957 was not an indication that they elected to capitalize this expense. Furthermore, as we will discuss infra, petitioners did not have an interest expense deduction in 1956 which could have been deducted. The noncompliance with the regulations prohibits a valid election. Smyth v. Sullivan, 227 F. 2d 12 (C.A. 9, 1955); Gulf Atlantic Transportation Co. v. United States, an unreported case ( S.D. Fla. 1956, 52 A.F.T.R. 2011, 56-2 USTC [*] 10,052). [12] We hold, therefore, that petitioners, not having elected to capitalize their interest expense, can deduct the amount of interest paid during 1957.[13]
*235 We find no merit in petitioners' argument regarding the other expenditures made in connection with the property. Assuming that the $1,358.33 paid in 1956 was for ordinary and necessary expenses, petitioners did not choose to deduct them on their return for 1956. They cannot now deduct them on their 1957 return. They were not "paid or incurred" during the year 1957. Accordingly, section 212 does not aid petitioners. We have found that the costs of sale totalled $1,877.40. These items were properly treated by respondent as a reduction of the selling price. The only other item paid by petitioners in 1957 was $100 for attorney's fees. This amount was also treated by respondent as a capital charge. Petitioners' having the burden to establish that this was an ordinary and necessary expense rather than a capital expenditure and not having offered any evidence to show what the legal fees were paid for, we must sustain respondent's treatment of this amount. Cf. Charlotte M. Douglas, 33 T.C. 349 (1959). The remaining question concerns the amount of interest actually paid in 1957. Since we have already decided that petitioners are entitled to deduct as an expense interest paid *236 in the year 1957, it becomes necessary to determine the amount paid in that year. The total interest paid was $1,436.98. [14] This amount is not in dispute. However, respondent contends that $1,050.07, representing the interest contained in the check made payable to Home Savings & Loan Association dated December 12, 1956, was paid in 1956 and not in 1957. The check cleared the drawee bank on January 17, 1957. Delivery of a check may constitute payment for purposes of determining the year in which a sum is deductible by a cash basis taxpayer. Estate of Modie J. Spiegel, 12 T.C. 524 (1949). The mailing of a check, properly addressed, can constitute delivery to the addressee. Witt's Estate v. Fahs, 160 F. Supp. 521 (S.D.Fla., 1956). Here we are without any information as to the date when the check in question was actually delivered to the Association or if mailed, as to the actual date of mailing. However, we know that Home Savings & Loan Association is a financial institution. It deals with checks in great numbers every day of its existence. It would be highly *237 unusual, to say the least, for a financial institution not to present a check for payment within a very short time after its receipt, especially in view of the applicable sections of the Negotiable Instruments Law. [15] The check was cleared on January 17, 1957, which would indicate receipt on a date some time immediately prior thereto. We conclude from the evidence that delivery of the check took place in January 1957. The Negotiable Instruments Law, [16] although providing that the date on an instrument is deemed to be the true date of execution, does not contain nor provide for any presumptions regarding the date of delivery. [17] In Smith's Estate v. Commissioner, 208 F. 2d 349 (C.A. 3, 1953), affirming on this issue a Memorandum Opinion of this Court, the Court of Appeals, in holding that a check dated December 16, 1947, and cashed on January 10, 1949, was not paid in 1947, stated: We think it would be an undesirable tax rule to let the mere date on an instrument, in the absence of showing of the time it was delivered, carry with it a conclusion that the instrument was delivered on the date put upon it by the drawer. *238 While it is true that the time lapse between the date of execution and the date of clearing is not as great in the instant case and even though the petitioners here are arguing that payment was made in the later year, we nevertheless find that the quoted language of the Court of Appeals is applicable here. Accordingly, having concluded that the check was paid in 1957, the portion thereof representing interest is a proper deduction in that year. Decision will be entered under Rule 50. Footnotes
1. Petitioners concede that the disallowance by respondent of $870.46 claimed as entertainment expenses was proper.↩
2. On this basis, the parties agreed that the amount of the loss was $5,214.21. However, on brief, respondent conceded that if the loss is a capital loss, expenses for real property taxes and repairs totaling $272.55 paid in 1957 are proper deductions in that year. This would correspondingly reduce the amount of the loss to $4,941.66.↩
3. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended. SEC. 165. LOSSES. (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * *
(c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - * * *
(2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; * * * ↩
4. Sec. 1231. PROPERTY USED IN THE TRADE OR BUSINESS AND INVOLUNTARY CONVERSIONS. (a) General Rule. - If, during the taxable year, the recognized gains on sales or exchanges of property used in the trade or business, plus the recognized gains from the compulsory or involuntary conversion (as a result of destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation or the threat or imminence thereof) of property used in the trade or business and capital assets held for more than 6 months into other property or money, exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. If such gains do not exceed such losses, such gains and losses shall not be considered as gains and losses from sales or exchanges of capital assets. * * * ↩
5. SEC. 1221. CAPITAL ASSET DEFINED. For purposes of this subtitle, the term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include - (1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxpayer year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business; (2) property, used in his trade or business, of a character which is subject to the allowance for depreciation provided in section 167↩, or real property used in his trade or business; 6. SEC. 1211. LIMITATION ON CAPITAL LOSSES. (b) Other Taxpayers. - In the case of a taxpayer other than a corporation, losses from sales or exchanges of capital assets shall be allowed only to the extent of the gains from such sales or exchanges, plus the taxable income of the taxpayer or $1,000, whichever is smaller. For purposes of this subsection, taxable income shall be computed without regard to gains or losses from sales or exchanges of capital assets and without regard to the deductions provided in section 151↩ (relating to personal exemptions) or any deduction in lieu thereof. If the taxpayer elects to pay the optional tax imposed by section 3, "taxable income" as used in this subsection shall be read as "adjusted gross income."
7. SEC. 165. LOSSES. (f) Capital Losses. - Losses from sales or exchanges of capital assets shall be allowed only to the extent allowed in sections 1211 and 1212↩. 8. The cited case involved secs. 23(e), 23(g) and 117(d), I.R.C. 1939, which sections were carried over to I.R.C. 1954 without substantive change as secs. 165(c), 165(f) and 1211↩. S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. 591), 83rd Cong., 2d Sess., p. 198; H. Rept. No. 1337, to accompany H.R. 8300 (Pub. L. 591), 83rd Cong., 2d Sess., pp. A46, A272, A273.
9. SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year - (1) for the production or collection of income; (2) for the management, conservation, or maintenance of property held for the production of income; or (3) in connection with the determination, collection, or refund of any tax. ↩
10. SEC. 266. CARRYING CHARGES. No deduction shall be allowed for amounts paid or accrued for such taxes and carrying charges as, under regulations prescribed by the Secretary or his delegate, are chargeable to capital account with respect to property, if the taxpayer elects, in accordance with such regulations, to treat such taxes or charges as so chargeable. ↩
11. Sec. 1.266-1(c)(3), Income Tax Regs.↩
12. Both cited cases were decided under sec. 24(a)(7), I.R.C. 1939, which was the predecessor of sec. 266↩. 13. With interest paid in 1957 being a proper deduction, the amount of the loss as determined in footnote 2, supra, must be adjusted accordingly.↩
14. The entire amount was paid to Home Savings & Loan Association, the holder of the first deed of trust, $1,295.87 being paid by check and $141.11 being paid out of the sale proceeds. ↩
15. Sec. 3265(b), California Civil Code, provides: A check must be presented for payment within a reasonable time after its issue or the drawer will be discharged from liability thereon to the extent of the loss caused by the delay. Sec. 3266, California Civil Code, defines "issue" as "the first delivery * * *." A "reasonable time," though varying depending on the facts, is usually interpreted to mean the next day when drawer, drawee and payee are all in the same town. 5 U.L.A. § 186. ↩
16. Adopted by California as Civil Code, Title 15, sec. 3082 et seq. in 1917. These sections were in effect during the year in issue. California has subsequently repealed the Negotiable Instruments Law, effective January 1, 1965, and adopted the Uniform Commercial Code. Stats. 1963, c. 819. ↩
17. Sec. 3092, California Civil Code. Sec. 3097, California Civil Code↩, states that a negotiable instrument in the hands of a holder in due course is presumed to have been validly delivered. However, this situation is not applicable herein. Furthermore, this section does not provide for a presumption as to the date of delivery.