Leonard J. Kobernat v. Commissioner. Josephine R. Kobernat v. Commissioner.
Kobernat v. Commissioner
Docket Nos. 4295-70, 4296-70.
United States Tax Court
T.C. Memo 1972-132; 1972 Tax Ct. Memo LEXIS 126; 31 T.C.M. (CCH) 593; T.C.M. (RIA) 72132; June 20, 1972
Leonard J. Kobernat and Josephine R. Kobernat, pro se, 1121 Wilshire Ave., San Antonio, Tex.Daniel A. Taylor, Jr., for the respondent. TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determined deficiencies in each petitioner's income tax as follows: *128 Year
Deficiency
1966
$ 665
1967
1,147 The two issues for decision are: (1) whether commissions received by Leonard J. Kobernat (hereinafter "Leonard") on purchases and sales of securities for his personal account, his wife's account, and their joint account constitute gross income to petitioners; and (2) whether petitioners' net losses on the sale of said securities are capital rather than ordinary in nature. Findings of Fact Some of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference. At the time the petitions were filed herein, petitioners were married and had their legal residence in San Antonio, Texas. Petitioners each filed separate individual income tax returns for the calendar years 1966 and 1967 with the district director of internal revenue, Austin, Texas. During the taxable year 1966 and until June 30, 1967, Leonard was a partner holding a one-percent interest in a partnership known as Dewar, Robertson and Pancoast, a stock brokerage firm. On July 1, 1967, 594 the partners in Dewar, Robertson and Pancoast sold their partnership interests to a partnership *129 known as Hornblower and Weeks, Hemphill-Noyes, also a stock brokerage firm. Leonard, a licensed stockbroker, worked as a commission salesman for Dewar, Robertson and Pancoast throughout 1966 and until June 30, 1967, and for Hornblower and Weeks, Hemphill-Noyes during the remainder of 1967. For his work, he was paid approximately one-third of the total commissions earned by these firms on purchases and sales of securities originating with him. During the years in issue, Leonard purchased and sold corporate securities through three accounts: one in his own name, another in his wife's name, and a third in their joint names. He held his wife's power of attorney to trade in her name. Neither Leonard nor his wife held these securities as inventory or primarily for sale to customers in the ordinary course of any trade or business. Petitioners paid commissions on the purchase and sale of securities for said personal accounts in the same amount as would have been paid by any other customer on comparable transactions. During the taxable years 1966 and 1967, Leonard received a share of the commissions on purchases and sales of securities made for petitioners' personal accounts in the amounts *130 of $6,265 and $10,382, respectively. He also received a share of the commissions on purchases and sales of securities for the accounts of others in the amounts of $8,924 in 1966 and $11,611 in 1967. In both cases, these amounts were received by Leonard as compensation separate and apart from his distributive share of any partnership income. The share of commissions received by Leonard in connection with purchases and sales for said personal accounts was the same as he would have received on comparable orders placed through him by any other customer. During the two years in question, using borrowed money almost exclusively, Leonard made over 500 closed transactions in the said personal accounts (over 1,000 separate purchases and sales of securities). The average holding period for the securities purchased was less than one week. On their income tax returns for 1966 and 1967, petitioners separately stated the gain or loss on each sale of securities. Each gain or loss was computed by subtracting the purchase price from the sale price. The reported purchase and sale prices were the amounts actually paid or received by petitioners. The reported purchase price was the sum of the price *131 of the security and the costs of the purchase, which included the full broker's commissions paid. The reported sale price was the sale price of the security less the costs of sale, which included the full broker's commissions paid. In accordance with the foregoing, petitioners reported net losses on the sale of securities in the amounts of $11,343 and $12,460 for the taxable years 1966 and 1967, respectively. Petitioners reduced these losses in the respective amounts of $6,265 and $10,382, i.e., the amounts Leonard received as his share of the commissions paid on those purchases and sales. Under Texas community property laws, Leonard and his wife each reported one-half of the resulting losses on their separate tax returns for each year involved herein. Petitioners did not include in gross income the share of the commissions received by Leonard on the purchases and sales of securities for their personal accounts during each of the years in issue. Opinion The first issue for decision is whether the share of the commissions received by Leonard on the purchase and sale of securities for his own account, his wife's account, and their joint account is includable in petitioners' gross *132 income under the provisions of section 61(a) [1] and sections 1.61-1(a) and 1.61-2(a), Income Tax Regs. Petitioners contend that the share of the commissions received on their own transactions represents reductions in the cost of securities purchased or increases in the proceeds of securities sold. Respondent argues that the amounts in question were received by Leonard as compensation and are taxable as such. We agree with respondent. The record is clear that petitioners paid commissions on the purchases and sales in question in the same manner and to the same extent that any other customer would 595 pay. It is also clear that Leonard received the same share of commissions regardless of whether he was buying or selling for petitioners' personal accounts or for the accounts of others. Petitioners, relying upon Benjamin v. Hoey, 139 F. 2d 945 (C.A. 2, 1944), argue that the share of commissions Leonard received represents compensation for services to himself and therefore should not be considered taxable income. The record, however, clearly indicates that such *133 share of the commissions constituted payment to Leonard, not for services to himself, but for his having brought business - albeit his own and that of his wife - to the firms for which he worked. His position is indistinguishable from that of the taxpayers in Commissioner v. Minzer, 279 F. 2d 338 (C.A. 5, 1960), reversing 31 T.C. 1130 (1959); Commissioner v. Daehler, 281 F. 2d 823 (C.A. 5, 1960), reversing 31 T.C. 722 (1959); Ostheimer v. United States, 264 F. 2d 789 (C.A. 3, 1959); George E. Bailey, 41 T.C. 663 (1964), wherein we indicated that we would follow the decision of the Court of Appeals in Minzer.[2]
Petitioners' reliance on Benjamin v. Hoey, supra, is misplaced That case involved the taxability of commissions which were merged into a partnership *134 distribution. Here, there is no partnership distribution involved and it is clear that, as far as the share of commissions received by Leonard is concerned, he should be considered as having the status of an employee. Cf. section 707(a). Consequently, Benjamin v. Hoey, supra, is inapplicable. Accordingly, we hold that Leonard realized taxable income under section 61(a) in the amounts of $6,265 and $10,382 in 1966 and 1967, respectively, half of which is taxable to him and half to his wife. The second issue involved is whether, as petitioners contend, the net losses on the sale of securities are ordinary losses under section 165(c) (1) or deductible business expenses under section 162. Respondent contends that the losses in issue do not fall in either of these categories but rather are capital losses deductible to the extent provided by sections 165(f) and 1211(b). The proper classification of the net losses in question does not turn on the number of transactions or the duration of the holding period of the assets. Rather, it depends upon whether the securities sold by petitioners constituted "capital assets" within the meaning of section 1221. Harry M. Adnee, 41 T.C. 40, 42 (1963). *135 See also section 1.1221-1(a), Income Tax Regs. The term "capital asset" is defined in section 1221, subject to certain exceptions, to mean "property held by the taxpayer (whether or not connected with his trade or business)." The only exception that could possibly apply would be that contained in subsection (1) of section 1221.[3] However, the evidence clearly shows that the securities involved herein were not inventory and were not held primarily for sale to customers. In short, with respect to the securities in question, Leonard and his wife were mere traders and any resultant gains or losses were capital in nature. Francis C. Currie, 53 T.C. 185, 199-200 (1969); Harry M. Adnee, supra, 41 T.C. at 43; George R. Kemon, 16 T.C. 1026, 1032-1033 (1951). As a consequence, section 165(f) applies to the exclusion of section 165(c) (1). Cf. Estate of Maria Assmann, 16 T.C. 632, 635-636 (1951). [4]
*136 Petitioners' reliance on Corn Products Co. v. Commissioner, 350 U.S. 46 (1955), is misplaced. The record herein is devoid of any evidence to the effect that petitioners' security transactions were integrally related to the conduct of Leonard's business of being a stockbroker or that those transactions were entered into in order to protect his position with the firms. Compare Corn Products Co. v. Commissioner, 596 supra; Charles W. Steadman, 50 T.C. 369 (1968), aff'd, 424 F. 2d 1 (C.A. 6, 1970). On the contrary, the only conclusion to be drawn from the evidence presented is that petitioners were engaged in short-term speculation with respect to the purchases and sales herein involved. Accordingly, we hold that the net losses realized on the sale of petitioners' securities were capital losses within the meaning of sections 165(f) and 1211(b). Decisions will be entered for the respondent. Footnotes
1. All references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. We do not attach any significance herein to the fact that the opinion in Bailey made no reference to the reversal of this Court's decision in Daehler. The issue in the latter case was whether the amount of the commission which the taxpayer received was an element directly involved in the negotiation of the actual purchase price.↩
3. SEC. 1221. CAPITAL ASSET DEFINED. For purposes of this subtitle, the term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include - (1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. ↩
4. Petitioners cannot salvage their position by seeking the benefit of the "transaction entered into for profit" provision of section 165(c) (2). That provision is also subject to the overriding effect of section 165(f). See J. K. Downer, 48 T.C. 86, 92 (1967); Estate of Maris Assmann, 16 T.C. 632↩ (1951).