**Nicholas M. BLASSIE and Clara Blassie, Petitioners,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 18986.**

United States Court of Appeals Eighth Circuit.

May 21, 1968.

James L. Zemelman, St. Louis, Mo., for petitioners; Morris A. Shenker, James F. Nangle, Jr., and Cordell Siegel, St. Louis, Mo., on the brief.

Chester C. Davenport, Atty., Tax Div., Dept. of Justice, Washington, D. C., for respondent; Mitchell Rogovin, Asst. Atty. Gen., and Lee A. Jackson and Da-

---

* Hon. Gus J. Solomon, Chief United States District Judge, Portland, Oregon, sitting by designation.

vid O. Walter, Attys., Dept. of Justice, Washington, D. C., on the brief.

Before MATTHES, MEHAFFY and LAY, Circuit Judges.

MATTHES, Circuit Judge.

This case is before the Court on petition to review the decision of the Tax Court, sustaining the Commissioner's determination of deficiencies in Petitioners' 1954, 1955 and 1956 individual income taxes. The opinion of the Tax Court is reported at 25 C.C.H. Tax Ct. Mem. 1291 (1967).

The sole issue is whether certain insurance commissions received by Petitioner, Nicholas M. Blassie, during the years in question in his capacity as an insurance broker constituted taxable income to him within the meaning of Section 61(a) of the Internal Revenue Code.[1] The facts, some of which have been stipulated, stand undisputed.

During the tax years in issue taxpayer was President of Local 88 of the Amalgamated Meat Cutters and Butcher Workmen of North America. In addition, he served as trustee of the "Local 88 Meat and Related Industries Welfare Fund," an organization formed on January 29, 1953 to administer the Local's health and welfare program for the benefit of all union members. To supplement the health and welfare benefits accruing under the Welfare Fund approximately 500 out of Local 88's 2,500 members made additional contributions to a voluntary organization known as the "Benevolent Society."

Towards the end of 1952 taxpayer and other officers of Local 88 were desirous of avoiding the payment of commissions to an outside broker derived from insurance obtained by the Welfare Fund for its health and welfare program. Their stated intention was to recapture for the benefit of the "Benevolent Society" insurance commissions otherwise paid to an independent broker. To achieve this end taxpayer, at the request of other officers of Local 88, applied for and was granted an isurance broker's license by the state of Missouri on or before January 27, 1953. In connection with the procurement of this license, Blassie orally agreed to turn over to the Benevolent Society all commissions which he would receive on insurance premiums paid by the Welfare Fund.

As the broker taxpayer received commission checks in the amount of $4,265.80 in 1954, $4,384.19 in 1955, and $3,900.37 in 1956.[2] On January 27, 1953, at a regular meeting of "the Local 88 Executive Board and nightworkers," Blassie stated that he had been "commissioned an insurance broker and all brokerage fees. he receives will be donated to the Benevolent Society." At each subsequent meeting the Secretary of Local 88 would indicate receipt of various commission checks, payable to taxpayer, which in turn were endorsed to the order of the Benevolent Society.

George A. Marklin, administrator of the Welfare Fund's insurance program, testified that taxpayer performed no services as insurance broker for Local 88 but that he, as administrator, handled all transactions and negotiations with the insurance company for the procurement of insurance for the Welfare Fund.

Taxpayer did not report the insurance commissions as income for 1954 through 1956. The commissions, although transferred to the Benevolent Society, were ultimately returned to the treasury of the Welfare Fund as the result of litigation between the two organizations.

On the basis of the foregoing facts the Commissioner of Internal Revenue took the position that the amounts received by taxpayer as insurance commissions

1. Since Clara Blassie, wife of Nicholas M. Blassie, is a party to this action solely because of the filing of joint income tax returns for the years in question, petitioners will hereinafter be referred to collectively as taxpayer or Blassie.

2. The parties have stipulated that Blassie received these amounts "as commissions or other remuneration in connection with insurance purchased by Local 88 Meat and Related Industries Welfare Fund."

were includable in his gross income. The Tax Court, in accord with the Commissioner's position, found that the commissions received by Blassie "were in payment for the services required of him as insurance broker, whether rendered by him personally or for him by another," and therefore were taxable to him. In so holding, the Tax Court rejected Blassie's theory that he was a mere agent or conduit for the purpose of receiving the amounts in question and transmitting them to the Benevolent Society.

Taxpayer raises a solitary point in this review proceeding. He contends that on the basis of the uncontroverted evidence the Tax Court was clearly erroneous in finding that Blassie was not an agent or conduit for the receipt of insurance commissions, and in holding that the commissions were taxable income to him. We have exhaustively reviewed the record and find no error in the Tax Court's determination that these commissions were properly includable in taxpayer's taxable income.

■ As a prelude to our disposition of taxpayer's contention we note that Congress has given an expansive interpretation to the term "income." Section 61(a) of the Internal Revenue Code of 1954 defines "gross income" as:

" * * * all income from whatever source derived, including (but not limited to) the following items:

(1) Compensation for services, including fees, commissions, and similar items;"

In our view the language of Section 61 (a) defining "gross income" in broadest terms manifests Congress' intention to exert the full measure of its taxing power over all realized gains. Helvering v. Clifford, 309 U.S. 331, 334, 60 S.Ct. 554, 84 L.Ed. 788 (1940); Heard v. Commissioner of Internal Revenue, 326 F.2d 962, 966 (8th Cir. 1964), cert. denied, 377 U.S. 978, 84 S.Ct. 1884, 12 L.Ed.2d 746 (1964); United Grocers, Ltd. v. United States, 308 F.2d 634, 637 (9th Cir. 1962). Where an individual by virtue of his trade or profession has "earned" the

right to income or has otherwise exercised dominion and control over its disposition, he is to that extent taxable on it. Helvering v. Horst, 311 U.S. 112, 61 S. Ct. 144, 85 L.Ed. 75 (1940); Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731 (1930); Corliss v. Bowers, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916 (1930); Cf. Mensik v. Commissioner of Internal Revenue, 37 T.C. 703, 747–748 (1962), aff'd, 328 F.2d 147 (7th Cir. 1964), cert. denied, 379 U.S. 827, 85 S.Ct. 55, 13 L.Ed.2d 37 (1964); Jaeger Motor Car Company v. Commissioner of Internal Revenue, 284 F.2d 127, 135 (7th Cir. 1960), cert. denied, 365 U.S. 860, 81 S.Ct. 826, 5 L.Ed.2d 823 (1961).

■ Taxpayer seeks to avoid the sweeping effect of these decisions by contending that he did not "earn" the insurance premiums he received. He argues that he neither performed nor was required to perform any brokerage services in connection with procuring insurance for the Welfare Fund, but that he merely acted as an intermediary in the transfer of the commissions to the Benevolent Society. The fact remains, however, that Blassie would not have received the commissions, but for the fact that he was the licensed broker of record in placing the Fund's insurance. Moreover, only an individual designated and licensed by the State of Missouri could legally receive commissions on the sale of insurance. The crucial factor therefore in determining Blassie's taxable status is not the quantum of services which he rendered as a broker, but rather the fact that the commissions were payable to him by virtue of his status as a licensed insurance broker. The record clearly indicates that Blassie's status alone generated the commission income, and that neither the administrator of the fund who performed the actual services nor the Benevolent Society which received the commission income had the right, independent of Blassie, to demand its receipt or determine its disposition. The legal incidents of taxability therefore must hinge on the taxpayer's right to receive the insurance commissions and

power of disposition over them notwithstanding his agreement to transfer their economic enjoyment to another.

Whether Blassie "earned" the insurance commissions or whether they constituted income within the meaning of Section 61(a) were basically issues of fact for the Tax Court. On the facts before us we cannot say as a matter of law that its conclusion was clearly erroneous, Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960), or hold that Blassie was no more than a mere agent or conduit for the receipt of such income.

The decision of the Tax Court is accordingly affirmed.