JERRY W. McIVER and JAMAINE L. McIVER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McIver v. Commissioner
Docket No. 8579-75.
United States Tax Court
T.C. Memo 1977-174; 1977 Tax Ct. Memo LEXIS 268; 36 T.C.M. (CCH) 719; T.C.M. (RIA) 770174; June 8, 1977, Filed Jerry W. McIver, pro se. Stuart B. Kalb, for the respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION RAUM, Judge: The Commissioner determined deficiencies *269 in petitioners' 1973 Federal income taxes, and additions to tax, as follows: Additions to Tax, I.R.C. 1954 Year
Deficiency
Sec. 6653(a)
Sec. 6651(a)
1973
$12,130.16
$639.10
$275.50
Due to concessions, the primary issue still in dispute is whether a certain payment received by petitioners in connection with a real estate transaction represents a brokerage commission includible in petitioners' gross income. The only other issue remaining in dispute is the section 6653(a) addition to tax. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, along with attached exhibits, is incorporated herein by this reference. Petitioners Jerry W. McIver and Jamaine L. McIver, husband and wife, resided in Winter Haven, Florida, at the time their petition in this case was filed. They filed a joint Federal income tax return for the calendar year 1973 with the office of the Director, Internal Revenue Service Center, Chamblee, Georgia. Since Jamaine L. McIver is a party to this proceeding solely by reason of having filed a joint return with her husband, Jerry W. McIver will hereinafter be referred to as the petitioner. *270 Petitioner Jerry W. McIver was engaged in various business activities in the Winter Haven, Florida, area, both as an individual and through at least one wholly owned corporation. He was, individually, a registered real estate agent entitled to do business in the state of Florida. Prior to the year in issue here, he had cobrokered at least one real estate transaction and had received a brokerage commission therefor. Jerco, Inc. ("Jerco"), was incorporated on September 27, 1972, and chartered to do business in Florida. It maintained its principal office in Winter Haven, Florida, and engaged primarily in the business of developing mobile home parks and leasing mobile home sites. Petitioner was president, chairman of the board of directors, and sole shareholder of Jerco. Jerco was not a registered corporate real estate broker or salesman in Florida. On March 3, 1973, Jerco and P.B., Inc., an apparently unrelated corporation, purchased approximately 80 acres of real estate (hereinafter the Lake Hamilton property) from Lake Hamilton Citrus, Inc., for possible development as a mobile home park. The total purchase price was $486,600. P.B., Inc. ("P.B."), made a cash down payment *271 of $60,000 to which Jerco was not required to contribute, and the purchasers executed a purchase money mortgage and note for the balance of $426,600. Jerco and P.B. each obtained an undivided one-half interest in the Lake Hamilton property. The sale of the Lake Hamilton property had its genesis in the efforts of one Richard Dantzler. Dantzler was a registered real estate broker and a partner in the firm of Town and Country Real Estate of Winter Haven, Inc. ("Town and Country"), and was the individual broker representing Lake Hamilton Citrus, Inc., in the sale of the Lake Hamilton property. He had previously had dealings with petitioner, and on at least one occasion had co-brokered a real estate transaction with him. He also knew that Jerco, petitioner's wholly-owned corporation, was a major developer of mobile home parks in the Winter Haven area. After receiving the Lake Hamilton listing, he contacted petitioner with respect to the Lake Hamilton property. Subsequent to Dantzler's initial contact petitioner, in his capacity as president and chairman of the board of Jerco, handled most of the negotiations and ultimately signed the closing statement. (That statement was also *272 signed by one Gilbert Brown on behalf of P.B.) During the negotiations Dantzler never asked Lake Hamilton Citrus, Inc., if it would accept a lower price for the property, and both the seller and Dantzler understood and intended that the seller would grant no rebates to reduce the selling price of $486,600. Upon consummation of the sale, Town and Country became entitled to a brokerage commission of ten percent of the purchase price, or $48,660, which was paid by the seller. For income tax purposes, Lake Hamilton Citrus, Inc., reduced the gain which it realized on the sale of the Lake Hamilton property by $48,660, the amount of the commission, and Town and Country received commission income in the same amount. It is common practice in the real estate brokerage business in Florida for a seller's broker to "cross-list" the property and to split the commission with the broker for the purchaser. Under this practice, the seller's broker pays one-half of the sales commission over to the buyer's broker or, if the buyer is itself a broker, directly to the buyer. On March 14, 1973, Town and Country issued a check payable to "Jerry McIver, Registered Real Estate Broker" in the amount of $24,330, *273 and bearing the notation that the amount was a real estate commission regarding the sale of the Lake Hamilton property. This check represented one-half of the commission which Town and Country had received from Lake Hamilton Citrus, Inc. Dantzler, on behalf of Town and Country, intended this check for Jerry McIver, personally, as a co-broker's commission. He had intended to split the Lake Hamilton commission with McIver from the first time he discussed the property with McIver; although aware that Jerco was wholly owned and controlled by petitioner, Dantzler considered petitioner individually to have served as broker in the transaction by producing the two buyers (Jerco and P.B.). Dantzler was indifferent as to the use which petitioner might make of the $24,330; he did not consider the check to be a refund of part of the purchase price of the Lake Hamilton property. Prior to the closing of the Lake Hamilton property purchase, petitioner and Jerco agreed that petitioner would turn over to Jerco any financial consideration which he might receive from Town and Country as a result of the Lake Hamilton purchase, and that such consideration would be considered as a reduction of Jerco's *274 capital investment in the Lake Hamilton property. Upon receiving Town and Country's check for $24,330, petitioner endorsed the check in the form: /s/ Jerry McIver, Reg. Real Estate, Broker, Deposit Only, Jerco Corp.
Petitioner then deposited the check in Jerco's checking account. Jerco accounted for the receipt of the check by debiting its cash account by $24,330, and by crediting the same amount to Account No. 307, petitioner's "shareholder's drawing" account, which was intermingled with and treated as petitioner's capital account as well. No part of the commission paid by Lake Hamilton Citrus, Inc., was received by P.B., Inc., the co-purchaser of the Lake Hamilton property.
Under Florida Statutes, Chapter 475, no person may operate as a real estate broker or salesman or collect a real estate commission in Florida unless such person has a valid current Florida registration certificate. Any registered real estate broker involved in an illegal real estate transaction in Florida would be subject to investigation by the Florida Real Estate Commission and possible loss of his real estate *275 license. Jerco would have been violating state law if it was in the business of acting as a real estate broker. Jerco would have been acting contrary to the language and/or intent of state law if it had received payment of the $24,330 amount from Town and Country as a real estate brokerage commission. Jerco went out of business and was liquidated in 1973. On their 1973 Federal income tax return, petitioners reported a loss on the sale or other disposition of their Jerco stock (which was section 1244 stock in their hands) in the amount of $85,160.25, and a bad debt on loans to Jerco of $286,153.17. They did not report as gross income the amount of $24,330 received from Town and Country and deposited in Jerco's checking account. The Commissioner determined that petitioners realized commission income in the amount of $24,330 with respect to the purchase of the Lake Hamilton property. The Commissioner disallowed petitioners' claimed loss on section 1244 stock to the extent that it exceeded $50,000, and petitioners have now conceded the correctness of this adjustment. Finally, the Commissioner asserted an addition to tax of $639.10 under section 6653(a) for negligence or intentional *276 disregard of rules and regulations in respect of petitioners' 1973 income tax return. OPINION The primary issue in this case is whether petitioner Jerry McIver realized commission income when he received $24,330 from Town and Country Real Estate in connection with the sale of the Lake Hamilton property. Petitioner takes the position that he received the check as the agent of Jerco and that, in effect, the check represented a reduction in the purchase price to Jerco of its interest in the Lake Hamilton property. We note at the outset, however, that the $24,330 paid by Lake Hamilton Citrus, Inc., through Town and Country Real Estate to Jerry McIver clearly represents commission income even if the recipient was Jerco, the purchaser of the property. Commissioner v. Daehler,281 F. 2d 823 (C.A. 5), reversing 31 T.C. 722; Williams v. Commissioner,64 T.C. 1085; see Commissioner v. Minzer,279 F. 2d 338 (C.A. 5), reversing 31 T.C. 1130; Ostheimer v. United States,264 F. 2d 789 (C.A. 3); Bailey v. Commissioner,41 T.C. 663. The real issue for decision, then, is whether *277 Jerry McIver, personally, or Jerco, through the agency of Jerry McIver, its president and chairman of its board, realized commission income upon the sale of the Lake Hamilton property.
It has long been established that income must be taxed to the person who earned it, irrespective of whether he actually received it or rather assigned the right to receive it to some other person. United States v. Basye,410 U.S. 441, 448-453; Commissioner v. Culbertson,337 U.S. 733, 739-740; Lucas v. Earl,281 U.S. 111; section 61, I.R.C. 1954. Where a small, closely-held corporation is involved, however, the issue may be complicated by the fact that the corporation can act only through agents who are likely to be its controlling shareholders. Nonetheless, so long as the corporation itself in fact earns the income, the corporation will be taxed. Ronan State Bank v. Commissioner,62 T.C. 27, 34-36. But where the shareholder-employee in fact acts in his own behalf rather than for the corporation, he and not the *278 corporation must bear the burden of the tax. Kimbrell v. Commissioner,371 F. 2d 897, 902 (C.A. 5); see Jaeger Motor Car Co. v. Commissioner,284 F. 2d 127, 135 (C.A. 7), affirming a Memorandum Opinion of this Court, certiorari denied 365 U.S. 860; cf. Moke Epstein, Inc. v. Commissioner,29 T.C. 1005. And in determining who in fact earned the income, the crucial question is not who has apparent control over the proceeds or who received the income in the first instance, but rather who was in control of the enterprise or of the capacity to earn the income, and who performed the acts which produced the income. Ronan State Bank v. Commissioner,supra,62 T.C. at 35; Shaw v. Commissioner,59 T.C. 375, 383-384; American Savings Bank v. Commissioner,56 T.C. 828, 839. On the facts here presented, we hold that petitioner Jerry McIver personally earned the commission on the sale of the Lake Hamilton property. Jerry McIver was a registered real estate agent entitled to do business in the state of Florida. He had had various prior dealings with Richard Dantzler, *279 the broker for Lake Hamilton Citrus, Inc., the seller, including at least one occasion on which he and Dantzler had split a commission as co-brokers on a real estate transaction. Although Dantzler himself was aware that McIver's whollyowned corporation might be a potential purchaser for the property, he contacted McIver as a real estate broker and McIver produced, in fact, not only his own corporation but also a second, apparently unrelated corporation as copurchasers. Dantzler made out Town and Country's check for $24,330 to Jerry McIver personally, because he considered McIver to have been acting as the broker in his personal capacity. Given the fact that Jerco was not a registered real estate broker entitled to receive real estate commissions, Dantzler would probably have refused to pay the commission to Jerco rather than to Jerry McIver. Furthermore, although we have been presented with conflicting and inadequate evidence on this point, it appears that Jerco treated the $24,330 check as Jerry McIver's contribution to the capital of the corporation. That is how the $24,330 check was treated initially on the books of the corporation. Petitioner has established that he acted *280 on behalf of Jerco in respect of its purchase of a one-half interest in the Lake Hamilton property, but he has offered no evidence whatsoever to corroborate his assertion that he was also acting on behalf of Jerco, an undisclosed principal (to the extent that it might itself be considered as a broker), when he served as co-broker in bringing about the sale of the property to Jerco and its joint venturer. We have found, in accordance with the stipulation of the parties, that Jerco would have been violating Florida law if it had acted as a broker and accepted commissions in the Lake Hamilton property transactions. Fla. Stat. Secs. 475.01(2), 475.42(1)(a,k). To be sure, the illegality of Jerco's receiving commissions would not prevent its being taxed on commission income which it in fact earned and which it did, in substance, receive, Local Finance Corp. v. Commissioner,48 T.C. 773, 787-90, affirmed 407 F. 2d 629 (C.A. 7), certiorari denied 396 U.S. 956; see Shaw v. Commissioner,supra,59 T.C. at 382; but cf. Commissioner v. First Security Bank of Utah,405 U.S. 394. Such illegality may nonetheless *281 be relevant in assessing the actual intent of the parties to the transaction. Campbell County State Bank, Inc. v. Commissioner,37 T.C. 430, 439 (fn. 5), reversed and remanded on other grounds, 311 F. 2d 374 (C.A. 8). In this case, as we have said, we doubt that Dantzler would have paid the commissions to anyone but Jerry McIver personally, since Dantzler could have been investigated and possibly disciplined by the Florida Real Estate Commission for participating in an illegal real estate transaction. And in addition we doubt that McIver, himself, would have structured the transaction in such a way as to violate Florida law, if formal documents had been prepared. Furthermore, we have concluded that Town and Country agreed to split its commission, and paid over to Jerry McIver $24,330, solely because Jerry McIver was a registered real estate agent. Jerry McIver was not required to do any act in order to earn the commission other than those acts which he had to perform, in any event, to cause Jerco and its joint venturer, P.B. to purchase the Lake Hamilton property.Conversely, no commission would have been paid had McIver not been a registered broker. *282 It is true that the holding of a license, registration, or other title or status is not conclusive evidence that the holder is the real earner of income derived from that title or status. Werner v. Commissioner,7 T.C. 39, 43; Updike v. Commissioner,22 B.T.A. 12. It is also true that corporations can earn income by virtue of the legal status of their employees. Ross Glove Co. v. Commissioner,60 T.C. 569, 591-92; Local Finance Corp. v. Commissioner,supra,48 T.C. at 787-90. But in this case Jerry McIver personally received a check representing commissions, payable only to a registered real estate agent, in respect of his services in obtaining two co-purchasers for a parcel of real estate. We have previously held that a taxpayer can realize commission income by virtue of his status even though he may perform little or no work in respect of the commissions, Williams v. Commissioner,64 T.C. 1085, 1089, and we conclude here that the absence of any independent acts required of the real estate broker *283 supports the inference that the commissions in question were earned by McIver, personally, rather than by Jerco, acting through its agent, McIver. Petitioner strenuously argues, however, that it was understood by him and by Jerco that he would arrange the purchase of the Lake Hamilton property on behalf of Jerco and pay over to Jerco any commissions received with respect thereto. The primary evidence presented in this regard was the affidavit of Roy Harmon, vice president and general manager of Jerco in 1973, who stated: It was understood and agreed between Jerco Corp. and Jerry W. McIver, that any financial consideration he might receive from Town & Country Real Estate as a result of the Lake Hamilton purchase was to be rendered to Jerco Corp. and was to be considered as a reduction of the capital position of Jerco Corp. in the Lake Hamilton property. Petitioner concludes that he was employed by Jerco upon the condition that he exercise the prerogatives of a registered real estate broker on Jerco's behalf, and that Jerco must therefore be considered to have earned the Lake Hamilton brokerage commission. He has presented no corporate documentation, however, to support this *284 allegation, and the statement by Roy Harmon suggests, to the contrary, that petitioner did no more than enter into an anticipatory assignment to Jerco of any real estate commissions which he might receive with respect to the Lake Hamilton property. It is axiomatic that anticipatory assignments are insufficient to shift the incidence of tax from one who earned income to another. Helvering v. Eubank,311 U.S. 122; Lucas v. Earl,281 U.S. 111; Blassie v. Commissioner,394 F. 2d 628 (C.A. 8), affirming a memorandum opinion of this Court. We hold, therefore, that the Commissioner correctly determined that petitioner realized commission income upon receipt of Town and Country's check for $24,330. The Commissioner also determined an addition to tax under section 6653(a) for negligence or intentional disregard of rules or regulations in respect of petitioners' 1973 income tax. Section 6653(a) provides for an addition to tax if "any part of any underpayment *285 * * * is due to negligence or intentional disregard of rules and regulations * * *". On their return, petitioners claimed a deduction of $85,160.25 with respect to a section 1244 stock loss. Section 1244(b) clearly states, however, that: For any taxable year the aggregate amount treated by the taxpayer by reason of this section as a loss from the sale or exchange of an asset which is not a capital asset shall not exceed -- (1) $25,000, or (2) $50,000, in the case of a husband and wife filing a joint return for such year under section 6013. Petitioners now concede the Commissioner's disallowance of their claimed section 1244 loss to the extent it exceeded $50,000. We hold that part of petitioners' underpayment was due to negligence or intentional disregard of rules or regulations, and that the Commissioner correctly asserted the section 6653(a) addition to tax against them. Since the parties have agreed on all the other adjustments made by the Commissioner, Decision will be entered for the respondent.